STATE of Iowa, Appellee,

v.

Michael COOLEY, Appellant.

No. 97–1657.

Supreme Court of Iowa.

Nov. 25, 1998.

Linda Del Gallo, State Appellate Defender, and John P. Messina, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Thomas S. Tauber, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Steven G. Norby and Joel Dalrymple, Assistant County Attorneys, for appellee.

Considered by CARTER, P.J., and LAVORATO, NEUMAN, SNELL, and CADY, JJ.

NEUMAN, Justice.

This appeal raises one narrow issue: Did the district court erroneously give a defendant the "choice" between two sentencing options posed by the court? The defendant seeks reversal and a remand for resentencing. We affirm the district court.

Defendant, Michael Cooley, was tried and convicted for operating while intoxicated, first offense, in violation of Iowa Code section 321J.2 (1995). By separate trial he was also convicted of violating the "registration applied for" provision of Iowa Code section 321.25, a simple misdemeanor. *See* Iowa Code § 321.482 (violation of any act governed by chapter 321 is simple misdemeanor unless otherwise indicated). Sentencing on the two offenses was consolidated for hearing.

At the sentencing hearing, the State began by noting that Cooley stood before the court with a substantial criminal record. Although the current offense was *charged* as an OWI first, it was in fact Cooley's fifth lifetime OWI offense. His record also revealed convictions for assault, drug possession, and numerous driving-under-suspension charges.

Given this history, the State urged imposition of a lengthy term of incarceration. It recommended a $500 fine and a one-year jail term on the OWI to run concurrently with a thirty-day sentence on the misdemeanor title conviction. In the alternative, however, the prosecutor suggested that if the sentences were run consecutively, Cooley could be committed to the custody of the department of corrections.[1] There, the prosecutor believed, Cooley would be eligible for a more rehabilitative protocol of substance abuse treatment and work release known as the "J-program."

Defense counsel responded, essentially, that Cooley adamantly opposed the "problems and harassment" accompanying any form of probation supervision. In his words, Cooley "would rather serve his whatever time he gets rather than being put on probation for this." Counsel pleaded for leniency, however, in the hope that Cooley might be placed in a residential correction facility where he could continue to work to support his children and invalid mother. Speaking for himself, Cooley asked the court to focus solely on the pending charge, evidently hoping the court would ignore his prior record.

The court made plain that a lengthy period of incarceration was in order. It also expressed some difficulty reconciling Cooley's eagerness to work with his reluctance to submit to supervision. In response to de-

---

1. A court imposing a sentence of confinement exceeding one year must commit the defendant to the custody of the Iowa Department of Corrections. Iowa Code § 901.7.

fense counsel's inquiry, the court explained that the J-program was available only to those committed to prison, not incarcerated in the local jail. The court clearly believed the J-program held more promise for rehabilitation than a mere jail sentence, but told Cooley that "unless you're really looking for some help and willing to undergo some treatment, it's not going to work." The court then urged Cooley to visit with his counsel about the two alternatives. At this juncture the court made the following statement that is at the heart of this controversy:

> [S]o I guess the choice is—and I don't usually do this, but under these unusual circumstances, I'm going to give you the choice—you can take the prison sentence of one year and thirty days [and] you can take the J–Program, or you can sit in jail for a year. That seems to be the two choices.

After an off-the-record discussion between counsel and client, and further description of the J-program by the prosecutor, defense counsel advised the court that Cooley "would prefer not to go through the J–Program." Questioned directly by the court, Cooley said "I might as well go to prison, you know. You know, I'm here as a first offense . . . ," whereupon the court reminded him that this was really his fifth offense, observing that Cooley was perhaps "not ready to meet this problem."

Thereafter the court sentenced Cooley to one year in the Black Hawk County jail on the OWI conviction, along with a $500 fine and surcharge, and ordered him to serve a concurrent sentence of thirty days on the misdemeanor title charge. This appeal by Cooley followed.[2]

## I. Scope of Review/Preservation of Error.

■ Our review is for the correction of errors at law. *State v. Thomas*, 547 N.W.2d 223, 225 (Iowa 1996). Because the challenged sentence does not fall outside statutory limits, we review the court's decision for abuse of discretion. *Id.* Reversal on this ground is warranted only if the court's discretion has been exercised "on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.*

■ The State devotes much of its brief to a claim that defendant has failed to preserve error. It insists Cooley should have alerted the trial court to the "choice" error now assigned on appeal. We disagree. Assuming, for the sake of argument, that a sentencing error occurred, we believe redress in this court is entirely appropriate.

It strikes us as exceedingly unfair to urge that a defendant, on the threshold of being sentenced, must question the court's exercise of discretion or forever waive the right to assign the error on appeal. As our court of appeals noted in a similar situation, it would be "incongruous" to apply ordinary preservation-of-error principles in this context. *State v. Thomas*, 520 N.W.2d 311, 313 (Iowa App. 1994); *see also State v. Young*, 292 N.W.2d 432, 435 (Iowa 1980) (rejecting State's claim that sentencing error must be raised by motion before the district court); *State v. Marti*, 290 N.W.2d 570, 589 (Iowa 1980) (rejecting State's claim that defendant failed to preserve error by not alerting court to its failure to state reasons for sentence). We thus turn to the merits of Cooley's appeal.

## II. Sentencing.

■ Cooley claims the district court "took a well-intentioned but improper approach" in imposing sentence. By deferring to his choice of sentence, Cooley argues, the court impermissibly relied on one factor in the sentencing process. We disagree with this characterization of the sentencing hearing, both procedurally and substantively.

Reasoned exercise of discretion is the hallmark of any proper sentencing procedure. We have summarized the sentencing court's duty this way:

> The trial court and we on review should weigh and consider all pertinent matters in

---

2. Because the simple misdemeanor conviction was consolidated with the OWI conviction for purposes of sentencing, and the possibility of consecutive sentencing is central to the appellate issue presented, discretionary review by this court is appropriate. See Iowa Code § 814.6(2)(d); Iowa R.App. P. 304.

determining proper sentence, including the nature of the offense, the attending circumstances, defendant's age, character and propensities and chances [for] reform. The courts owe a duty to the public as much as to defendant in determining a proper sentence. The punishment should fit both the crime and the individual.

*State v. Hildebrand*, 280 N.W.2d 393, 396 (Iowa 1979). Echoing the sentiment urged on this appeal, we have also observed that "[e]ach sentencing decision must be made on an individual basis, and no single factor alone is determinative." *State v. Johnson*, 513 N.W.2d 717, 719 (Iowa 1994). These admonitions reflect the statutory criteria applicable to every sentence. Iowa Code section 901.5 provides, in pertinent part:

> The court shall determine which [sentencing option] is authorized by law for the offense, and of the authorized sentences, which of them or which combination of them, in the discretion of the court, will provide maximum opportunity for the rehabilitation of the defendant, and for the protection of the community from further offenses by the defendant and others.

The record before us reveals that the court examined many factors relevant to Cooley's particular circumstance. The court expressed concern over the nature of the offense—drunk driving—and Cooley's four prior OWI convictions; his evident inability to reform his behavior; and the danger Cooley posed to himself, his family, and the community if his criminal conduct was not deterred. Based on these factors, the court concluded only a "prolonged sentence" was justified.

■ Consideration of these factors led the court to narrow its sentencing options to two alternatives. The first option was to incarcerate Cooley in the county jail for one year, permitting him to "dry out" and keeping him off the streets. The second option was to commit Cooley to the department of corrections for one year and thirty days, thereby creating an opportunity for Cooley to participate in the J-program. This option, the court believed, offered Cooley the chance to address the problems underlying his criminal behavior. But the court also knew that the success of the program would hinge on Cooley's commitment to rehabilitation.

Rather than simply asking Cooley outright about his interest in participating in the rehabilitation program, the court framed the question as a choice between the two alternatives the court was considering. Based on the alternatives posed, Cooley stated he was not interested in any form of probationary supervision and preferred serving time. Taking Cooley's lack of interest in rehabilitation as a significant factor to be considered, the court then made its sentencing decision and sentenced him to the first option, one year in jail.

While we do not condone the "choice" method used by the court to ascertain Cooley's propensity and chance for reform, we are convinced the court did not thereby abdicate its responsibility to determine the proper sentence. The sentencing record plainly demonstrates that it was the court, not Cooley, who made the final choice of sentence. The court's inquiry merely helped it to weigh and consider all pertinent factors requiring consideration.

Additionally, we reject Cooley's claim that he was in no position to make either an informed or wise choice of sentence. We have concluded the "choice" given Cooley was no more than a method of assessing his attitude toward rehabilitation. It was not a means of finalizing the sentencing decision. Assuming arguendo that Cooley was not thoroughly advised about the J-program by the court, Cooley was still in the best position to make a wise choice about whether he was interested in rehabilitation or not. He is in a poor position to complain that the court took its cue from his negative response.

In short, the record reveals no abuse of the trial court's broad sentencing discretion. Accordingly, we affirm the judgment and sentence entered upon Cooley's conviction.

**AFFIRMED.**