# IN THE SUPREME COURT OF IOWA

No. 07–0793

Filed April 23, 2010

**STATE OF IOWA,**

    Appellee,

vs.

**RITCHIE LEE LATHROP,**

    Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Poweshiek County, Dan F. Morrison, Judge.

Defendant appeals sentence, claiming imposition of lifetime parole violated ex post facto clause and condition of probation was an abuse of discretion. **DECISION OF COURT OF APPEALS VACATED IN PART; SENTENCE VACATED IN PART AND CASE REMANDED FOR RESENTENCING.**

Mark C. Smith, State Appellate Defender, and Theresa R. Wilson, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Karen Doland, Assistant Attorney General, Michael W. Mahaffey, County Attorney, and Rebecca L. Petig, Assistant County Attorney, for appellee.

**TERNUS, Chief Justice.**

The defendant, Ritchie Lathrop, appeals from his conviction and sentence for third-degree sexual abuse. His appeal was transferred to the court of appeals, where his conviction was affirmed and several claims for postconviction relief were preserved. We granted the defendant's application for further review to consider two issues: (1) whether his sentence to lifetime parole under Iowa Code section 903B.1 (2007) violated the constitutional prohibition against ex post facto laws, and (2) whether the sentencing court abused its discretion by ordering him to have no contact with anyone under the age of eighteen without the permission of his probation officer. Upon consideration of the record and controlling authorities, we vacate that part of the defendant's sentence placing him on lifetime parole, as well as the condition of probation prohibiting all contact with anyone under the age of eighteen. We remand to the trial court for the opportunity to impose a less restrictive condition on the defendant's probation.

### I. Background Facts and Proceedings.

The evidence at trial would support a finding that the defendant had sexual relations with Jane Doe at various times during 2005. The defendant was twenty-seven when the relationship began; the victim was fifteen until her birthday in October 2005.

In December 2006, the State charged Lathrop with third-degree sexual abuse. *See* Iowa Code § 709.4(2)(*c*)(4) (prohibiting sex act between persons not husband and wife if one person is fourteen or fifteen and other person is four or more years older). A jury convicted Lathrop of this charge, and the court sentenced him to an indeterminate sentence not to exceed ten years. The court suspended the sentence and placed the defendant on probation for three years. In addition to other conditions of his probation, he was ordered to "have no contact with anyone under the age of 18 without the permission

of his supervising officer." Finally, the court determined the lifetime-parole sentence under section 903B.1[1] was applicable and therefore "committed [the defendant] to the custody of the director of the Iowa Department of Corrections for the rest of [his life] . . . with eligibility for parole as provided in chapter 906."

The defendant appealed, and we transferred the case to the court of appeals. That court affirmed his conviction and sentence, and preserved several claims for postconviction relief. We granted further review to address the defendant's challenge to his sentencing under section 903B.1 and to the no-contact condition of his probation.[2] The State claims error was not preserved on either claim because the defendant did not object in the district court to the portions of his sentence that he now challenges on appeal. We address the error-preservation issue first.

## II. Error Preservation.

**A. General Principles.** Iowa Rule of Criminal Procedure 2.24(1) states: "Permissible motions after trial include motions for new trial, motions in arrest of judgment, and motions to correct a sentence." Iowa R.

---

[1]Iowa Code section 903B.1 provides in pertinent part:

> A person convicted of a class "C" felony or greater offense under chapter 709 . . . shall also be sentenced, in addition to any other punishment provided by law, to a special sentence committing the person into the custody of the director of the Iowa department of corrections for the rest of the person's life, with eligibility for parole as provided in chapter 906 [parole and work release]. The special sentence imposed under this section shall commence upon completion of the sentence imposed under any applicable criminal sentencing provisions for the underlying criminal offense and the person shall begin the sentence under supervision as if on parole.

Iowa Code § 903B.1.

[2]The court of appeals' disposition of the issues raised by the defendant and not addressed in this opinion stands as the final decision in this appeal.

Crim. P. 2.24(1).[3]  Only subpart (5) of rule 2.24 addresses motions to correct a sentence, and it simply provides that "[t]he court may correct an illegal sentence at any time."  Iowa R. Crim. P. 2.24(5)(*a*).  We have narrowly interpreted this rule, as a brief historical review illustrates.

In *State v. Wilson*, 294 N.W.2d 824 (Iowa 1980), this court had an opportunity to interpret rule 23(5)(*a*) (later renumbered rule 2.24(5)(*a*)) when the State contended the defendant had not preserved his claim that the trial court had failed to state reasons for its sentence as the defendant had not raised this error in the district court.  294 N.W.2d at 825.  In considering whether the defendant should have filed a motion under rule 23(5)(*a*), we decided that because this rule provided no time limit for filing a motion to correct a sentence, the rule was meant to apply *only* to illegal sentences.  *Id.* (noting that expansion of the rule to apply to procedural defects in sentencing "would open up a virtual Pandora's box of complaints with no statutorily prescribed procedures for their disposition nor any time limits for their implementation").  Nonetheless, relying on basic fairness, we held the defendant was not required to raise his objection to the sentencing defect prior to appeal:

> In the case at hand, there is no procedure under our existing rules for a defendant to raise the issue at the trial court level. He may not be held to have waived his objection by failing to raise it at the sentencing because he had no way to know then that the judge would leave it out of the subsequent judgment. He has no way to raise the defect after judgment because, as we have discussed, a motion to "correct" an illegal sentence under rule 23(5)(a) is the only rule which could be a basis for relief in the trial court, and it is inapplicable here. A defendant without a procedure for raising an issue in the trial court obviously cannot be held to have waived his right to appeal.

---

[3]Rule 2.24 was originally found in Iowa Code section 813.2 (1979).  With respect to motions to correct a sentence, the rule is substantially the same now as it was in 1979. *Compare* Iowa Code § 813.2 (1979), *with* Iowa R. Crim. P. 2.24(1).

*Id.* at 826 (citation omitted); *accord State v. Marti*, 290 N.W.2d 570, 589 (Iowa 1980).

Since our decision in *Wilson*, Iowa appellate courts have held in a variety of circumstances that errors in sentencing need not be first challenged in the district court. *See, e.g., State v. Ayers*, 590 N.W.2d 25, 27 (Iowa 1999) (claim that district court failed to exercise its discretion in sentencing defendant); *State v. Cooley*, 587 N.W.2d 752, 754 (Iowa 1998) (claim that district court improperly exercised its sentencing discretion by requiring defendant to choose between two proffered sentences); *State v. Young*, 292 N.W.2d 432, 435 (Iowa 1980) (claim that the district court considered an improper factor in determining proper sentence); *State v. Thomas*, 520 N.W.2d 311, 312–13 (Iowa Ct. App. 1994) (claim that district court improperly considered department of corrections' parole policies in choosing appropriate sentence). In *Cooley*, this court observed that it would be "exceedingly unfair to urge that a defendant, on the threshold of being sentenced, must question the court's exercise of discretion or forever waive the right to assign the error on appeal." 587 N.W.2d at 754.

Error-preservation principles applicable to illegal sentences are even broader. As rule 2.24(5)(*a*) provides, illegal sentences may be corrected at any time. Iowa R. Crim. P. 2.24(5)(*a*) ("The court may correct an illegal sentence at any time."); *see also Young*, 292 N.W.2d at 435 (holding even with respect to illegal sentences encompassed in rule 23(5)(a), now rule 2.24(5)(a), a motion to correct a sentence is not a prerequisite to a postjudgment challenge to the sentence). "An illegal sentence is void" and, for this reason, is " 'not subject to the usual concepts of waiver, whether from a failure to seek review or other omissions of error preservation.' " *State v. Woody*, 613 N.W.2d 215, 217 (Iowa 2000) (quoting *State v. Ohnmacht*, 342 N.W.2d 838, 842, 843 (Iowa 1983)). Thus, when "the claim

is that the sentence itself is inherently illegal, whether based on constitution or statute," the claim may be asserted at any time. *State v. Bruegger*, 773 N.W.2d 862, 872 (Iowa 2009); *accord Ohnmacht*, 342 N.W.2d at 843 (holding "an illegal sentence is subject to correction regardless of whether or not it was timely appealed"). The breadth of this rule was recently illustrated when this court held that even expiration of the statute of limitations for postconviction-relief actions will not bar a challenge to an illegal sentence. *See Veal v. State,* 779 N.W.2d 63, 65 (Iowa 2010).

In summary, errors in sentencing may be challenged on direct appeal even in the absence of an objection in the district court. Illegal sentences may be challenged at any time, notwithstanding that the illegality was not raised in the trial court or on appeal.

**B. Preservation of Ex Post Facto Claim.** We first consider whether the defendant's argument that imposition of lifetime parole violates the ex post facto clause is a claim that the sentence is illegal. A challenge to an illegal sentence "includes claims that the court lacked the power to impose the sentence or that the sentence itself is somehow inherently legally flawed, including claims that the sentence is outside the statutory bounds or that the sentence itself is unconstitutional." *Bruegger*, 773 N.W.2d at 871.

Here, the defendant contends application of section 903B.1 to conduct that occurred before the statute's effective date would violate the ex post facto clause. For this reason, he argues it cannot be constitutionally applied to him. We think this claim, like the one in *Bruegger*, is a claim that the sentence is inherently illegal. Therefore, the defendant's claim may be urged on appeal notwithstanding trial counsel's failure to object to imposition of the sentence of lifetime parole. Accordingly, we will consider the defendant's ex post facto challenge to this aspect of his sentence directly and not under an ineffective-assistance-of-counsel framework.

**C. Preservation of Challenge to Condition of Probation**. The defendant does not challenge the sentencing court's authority to impose conditions on his probation. Rather, he claims the condition of his probation ordering him to have no contact with anyone under the age of eighteen without the permission of his probation officer is unreasonable because its scope is excessive. We think this claim is indistinguishable from the claim made in *Bruegger*.

"The legislature has given the courts broad, but not unlimited, authority in establishing the conditions of probation." *State v. Jorgensen*, 588 N.W.2d 686, 687 (Iowa 1998). Iowa Code section 907.6 provides:

> Probationers are subject to the conditions established by the judicial district department of correctional services subject to the approval of the court, and *any additional reasonable conditions which the court* or district department *may impose to promote rehabilitation of the defendant or protection of the community.*

Iowa Code § 907.6 (emphasis added). Although the sentencing judge has discretion with respect to the conditions of probation, that discretion must be exercised "within legal parameters." *State v. Formaro*, 638 N.W.2d 720, 725 (Iowa 2002). The defendant contends the court has exceeded those parameters here by imposing an *unreasonable* condition that does *not* promote his rehabilitation and extends far beyond what is necessary to protect the community. In essence, he claims the court has gone outside the limits of allowable sentencing. As we stated in *Bruegger*, a claim that a sentence "is outside the statutory bounds" is a claim the sentence is illegal, and falls within our rule allowing the sentence to be corrected at any time. *Bruegger*, 773 N.W.2d at 871.

This case is distinguishable from cases that concern sentences that are within the court's statutory and constitutional authority but were procedurally flawed or imposed in an illegal manner. *See, e.g., Ayers*, 590

N.W.2d at 27 (considering whether the district court failed to exercise its discretion in sentencing the defendant); *Cooley*, 587 N.W.2d at 754 (considering whether the district court improperly exercised its sentencing discretion by requiring the defendant to choose between two proffered sentences); *Young*, 292 N.W.2d at 435 (considering whether the district court applied an improper factor in determining the proper sentence); *see also Bruegger*, 773 N.W.2d at 871–72 (noting distinction between illegal sentences and errors in the proceedings prior to imposition of sentence). Here, the sentence itself is claimed to be illegal because the condition of probation exceeded the statutory parameters. *See Tindell v. State*, 629 N.W.2d 357, 359 (Iowa 2001) (stating an illegal sentence is one not authorized by statute); *see also State v. Tensley*, 334 N.W.2d 764, 765 (Iowa 1983) (vacating condition of probation that was "not authorized by law"); *cf. Biller v. State*, 618 So. 2d 734, 734–35 (Fla. 1993) (holding condition of probation that was unrelated to offender's crime "could not be legally imposed"); *State v. Burdin*, 924 S.W.2d 82, 87 (Tenn. 1996) (holding condition of probation that was unrelated to the defendant's rehabilitation was "not authorized by statute").

Because the defendant's challenge to the no-contact condition of his probation goes to the court's authority to impose this condition in this case, his claim is for the correction of an illegal sentence. Therefore, we will consider the defendant's challenge to this probation condition as a direct challenge and not as a claim of ineffective assistance of counsel.

### III. Sentence Under Section 903B.1.

The defendant claims the application of section 903B.1 to him violated the constitutional prohibition against ex post facto laws.[4] *See* Iowa Const.

---

[4]Although the defendant has alleged a violation of both the federal and state constitutions, we find it unnecessary to address the federal constitutional claim, as we find the state constitutional claim dispositive.

art. 1, § 21 ("No . . . ex post facto law . . . shall ever be passed."). An ex post facto law includes "one that makes the punishment for a crime more burdensome after its commitment." *State v. Iowa Dist. Ct.*, 759 N.W.2d 793, 797 (Iowa 2009). Thus, two elements must be present for a criminal law to operate as an ex post facto law. *Id.* First, the law " 'must be retrospective, that is, it must apply to events occurring before its enactment.' " *Id.* (quoting *Weaver v. Graham*, 450 U.S. 24, 29, 101 S. Ct. 960, 964, 67 L. Ed. 2d 17, 23 (1981), *abrogated on other grounds by Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 506 n.3, 115 S. Ct. 1597, 1602 n.3, 131 L. Ed. 2d 588, 595 n.3 (1995)). Second, it must " 'alter[] the definition of criminal conduct or increase[] the penalty by which a crime is punishable.' " *Id.* at 797 n.5 (quoting *Morales*, 514 U.S. at 506 n.3, 115 S. Ct. at 1602 n.3, 131 L. Ed. 2d at 595 n.3). Before we discuss whether these elements exist, we first consider whether the statute imposing lifetime parole is a criminal or penal law.

**A. Is Section 903B.1 a Criminal or Penal Law?** The State suggests section 903B.1 does not impose "punishment." This issue is a question of legislative intent. *See State v. Pickens*, 558 N.W.2d 396, 398 (Iowa 1997). We must ask " 'whether the legislative aim was to punish [the] individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation.' " *Id.* (quoting *DeVeau v. Braisted*, 363 U.S. 144, 160, 80 S. Ct. 1146, 1155, 4 L. Ed. 2d 1109, 1120 (1960)). "If the legislature intended the statute to impose criminal punishment, this intent controls, so the law is considered to be punitive in nature." *Formaro v. Polk County*, 773 N.W.2d 834, 843 (Iowa 2009).

In examining pertinent indicators of legislative intent, we conclude the statute imposing lifetime parole was intended to be punitive in nature. The bill in which this statute was enacted is entitled "Criminal Justice — DNA

Sampling, Sex Offenders and Offenses, and Victim Rights." 2005 Iowa Acts ch. 158. This bill includes the following summary of its content:

> **AN ACT** relating to *criminal sentencing*, victim notification, and the sex offender registry, *by establishing a special sentence for certain offenders*, requiring DNA testing of certain offenders and lengthening the time an information or indictment may be found in certain offenses where DNA evidence is available, requiring sex offender treatment in order to accumulate earned time, restricting certain persons from residing with sex offenders, establishing a sex offender treatment and supervision task force, providing penalties, and providing effective dates.

*Id.* (emphasis added). The specific section that imposes lifetime parole on offenders such as the defendant appears in division III of the act, entitled "Enhanced Criminal Penalties and Statute of Limitations." *Id.* ch. 158, §§ 35–43. The lifetime-parole provision was codified in Iowa Code chapter 903B, entitled "Special Sentencing and Hormonal Intervention Therapy for Sex Offenders." Iowa Code ch. 903B. Section 903B.1 is labeled "Special sentence — class "B" or class "C" felonies," and the statute itself refers to lifetime parole as a "special sentence." *Id.* § 903B.1. A "sentence" is generally understood to be "the punishment imposed on a criminal wrongdoer." *Black's Law Dictionary* 1393 (8th ed. 2004). Moreover, the legislature's use of "parole" as the framework for this special sentence is also significant, as we have held that "[p]arole is a lenient *form of punishment* that monitors a person's activities to ensure the person is complying with the law." *State v. Tripp*, 776 N.W.2d 855, 858 (Iowa 2010) (emphasis added). We think the legislative history of this statutory provision, as well as the language of the statute, provide clear evidence of legislative intent that lifetime parole is an additional punishment imposed on certain sex offenders.

Courts from other states have similarly concluded that the imposition of lifetime parole on criminal offenders is punishment.[5] *See State v. Payan*, 765 N.W.2d 192, 203 (Neb. 2009) (holding legislature intended "to establish an additional form of punishment for some sex offenders"), *cert. denied*, ___ U.S. ___ (2010); *Palmer v. State*, 59 P.3d 1192, 1195 (Nev. 2002) (holding "post-release supervision increases the maximum range of an offender's sentence, thereby directly and immediately affecting the defendant's punishment"); *State v. Jamgochian*, 832 A.2d 360, 362 (N.J. 2003) (concluding "community supervision for life . . . is a penal and not a collateral consequence of the sentence"); *see also Samson v. California,* 547 U.S. 843, 850, 126 S. Ct. 2193, 2198, 165 L. Ed. 2d 250, 258 (2006) (holding parole is punishment, noting " 'parole is an established variation of imprisonment of convicted criminals' " (quoting *Morrissey v. Brewer*, 408 U.S. 471, 477, 92 S. Ct. 2593, 2598, 33 L. Ed. 2d 484, 492 (1972))). The Nebraska Supreme Court's analysis is particularly instructive.

In *Payan*, the Nebraska court concluded the legislature's intent that lifetime supervision be penal in nature was shown, in part, by the fact that supervision was provided by the parole office of the department of correctional services. 765 N.W.2d at 202. In addition, the provision imposing lifetime supervision was placed in the code chapter pertaining to correctional services and parole. *Id.* (noting "[t]he term 'parole' has a distinctively penal connotation"). The court also found it significant that

---

[5]The statutory schemes in Nebraska, Nevada, and New Jersey are substantially similar to Iowa's section 903B.1. *See* Neb. Rev. Stat. § 83-174.03 (2007) (requiring that certain sex offenders, upon completion of their term of commitment, "be supervised in the community by the Office of Parole Administration for the remainder of his or her life"); Nev. Rev. Stat. § 176.0931 (2009) (providing for "special sentence of lifetime supervision" for specified sex offenders, to commence after any term of imprisonment or period of parole is served); N.J. Stat. § 2C:43–6.4 (2005) (imposing "a special sentence of parole supervision for life" on persons convicted of certain sexual offenses, such sentence to "commence immediately upon the defendant's release from incarceration").

lifetime supervision began "upon completion of the offender's term of incarceration or release from civil commitment" and persons under lifetime supervision were subject to "affirmative restraints and disabilities similar to and arguably greater than traditional parole." *Id.* at 203. Finally, the court pointed out lifetime supervision was imposed without "any finding that the offender poses a risk to the safety of others at the time he or she completes a period of incarceration or civil commitment." *Id.* Under these circumstances, the court held, "the legislative intent . . . was to establish an additional form of punishment." *Id.*

The same factors found persuasive by the Nebraska Supreme Court exist here with respect to section 903B.1. A defendant subject to a sentence of lifetime parole is committed to "the custody of the director of the Iowa department of corrections for the rest of the person's life." Iowa Code § 903B.1. "[T]he person shall begin the sentence under supervision *as if on parole,*" and is subject to the same procedures and rules adopted "for persons on parole." *Id.* (emphasis added). As in Nebraska, this special sentence commences upon completion of the sentence imposed for the underlying criminal offense without any showing that the offender poses a safety risk. *Id.* Based on these factors, we are convinced that the imposition of lifetime parole was intended by the legislature to be additional punishment for certain sex offenders. Therefore, this statute is subject to the restrictions imposed by the constitutional prohibition against ex post facto laws.

**B. Was Section 903B.1 Applied Retrospectively?** In determining whether a new law is retrospectively applied, we ask " 'whether the law changes the legal consequences of acts completed before its effective date.' " *Iowa Dist. Ct.*, 759 N.W.2d at 798 (quoting *Weaver*, 450 U.S. at 31, 101 S. Ct. at 965, 67 L. Ed. 2d at 24). Thus, we must determine whether the

sentence of lifetime parole was applied to an offense committed before the effective date of this new law.

Section 903B.1 became effective on July 1, 2005. *See* Iowa Code § 3.7(1); 2005 Iowa Acts ch. 158, § 39. The amended trial information in this case alleged the defendant committed the prohibited sex acts with the victim between June 2005 and September 2005. Evidence admitted at trial included testimony by the victim that she had sex with the defendant soon after they began dating in March 2005. In addition, two witnesses testified to a specific sexual act occurring between the defendant and the victim in June 2005.

The jury was instructed that, to establish the defendant committed sexual abuse in the third degree, it must find, among other facts, that, "[d]uring the months of June through September 2005, the defendant performed a sex act with [the victim]." The jury returned a general verdict finding the defendant "guilty of the crime of Sexual Abuse in the Third Degree as charged in the Trial Information." The general verdict form used by the jury did not require it to make a determination of or specify the dates on which the illegal sex acts occurred.

When circumstances make it impossible for the court to determine whether a verdict rests on a valid legal basis or on an alternative invalid basis, we give the defendant the benefit of the doubt and assume the verdict is based on the invalid ground. *See, e.g., State v. Heemstra*, 721 N.W.2d 549, 558–59 (Iowa 2006) (reversing defendant's conviction because general verdict did not reveal whether it rested on ground found to be legally flawed); *State v. Hogrefe*, 557 N.W.2d 871, 881 (Iowa 1996) (reversing conviction based on general verdict of guilty, where three theories were submitted to jury but only one was supported by substantial evidence, because there was "no way of determining which theory the jury accepted"); *State v. Pilcher*, 242

N.W.2d 348, 354–56 (Iowa 1976) (holding conviction must be reversed when general verdict did not specify upon which sodomy alternative the verdict rested and one of the alternatives was unconstitutional); *cf. State v. Byers*, 456 N.W.2d 917, 919 (Iowa 1990) ("Statutes that are penal in nature are to be strictly construed, with any doubt resolved against the State and in favor of the accused.").

We recently considered the application of this rule in *State v. Cowles*, 757 N.W.2d 614 (Iowa 2008), a case involving an ex post facto claim. In *Cowles*, the defendant was charged with twenty counts of second-degree sexual abuse occurring between April 1996 and February 1997. 757 N.W.2d at 615 & n.1. He pled guilty to one count. *Id.* at 615. The resulting sentence included a mandatory minimum sentence required by Iowa Code section 902.12, a statute that did not become effective until July 1, 1996. *Id.* at 616. In rejecting the defendant's ex post facto challenge to the imposition of the mandatory minimum sentence, we noted that at the plea hearing the defendant expressly admitted he committed the illegal sex act between April 9, 1996, and February 2, 1997. *Id.* at 617. Moreover, prior to pleading guilty, the defendant was advised he would be required to serve the mandatory minimum. *Id.* Under these circumstances, we found an implicit admission by the defendant that he committed the offense after July 1, 1996. *Id.* Therefore, the statute was not applied to conduct occurring before its enactment, and there was no violation of the ex post facto clause. *Id.* We expressly distinguished "cases in which a general jury verdict of guilt leaves the court with uncertainty as to whether the verdict is based on a valid factual or legal basis, or on an alternative invalid theory submitted to the jury." *Id.* We noted that, "[i]n such cases of uncertainty, a conviction cannot stand." *Id.*

We have such a case of uncertainty here. There is no way to determine whether the jury based its verdict on conduct that occurred before or after the effective date of the law imposing a sentence of lifetime parole. Therefore, we must presume the verdict rests on conduct that occurred before the enactment of the lifetime-parole law. Consequently, section 903B.1 has been applied retrospectively in this case.

**C. Has the Retroactive Application of Section 903B.1 Increased Defendant's Punishment?** The second element of the ex post facto analysis is whether the statutory change "alters the definition of criminal conduct or increases the penalty by which a crime is punishable." *Morales*, 514 U.S. at 506 n.3, 115 S. Ct. at 1602 n.3, 131 L. Ed. 2d at 595 n.3; *accord Iowa Dist. Ct.,* 759 N.W.2d at 797 n.5; *State v. Smith*, 291 N.W.2d 25, 28 (Iowa 1980) (" '[A] punitive measure is ex post facto if it . . . increases the malignity of or possible penalty for past conduct which was criminal when it occurred.' " (quoting *State v. Quanrude*, 222 N.W.2d 467, 469–70 (Iowa 1974))). In the context of this statute, we must decide whether a sentence of lifetime parole "increases the penalty by which [the defendant's] crime is punishable." *Morales*, 514 U.S. at 506 n.3, 115 S. Ct. at 1602 n.3, 131 L. Ed. 2d at 595 n.3.

We think it clearly does. As we have discussed above, lifetime parole is a form of punishment; it is an additional sentence on the specified sex offenders. As such, it increases the penalty for the defendant's crime. Accordingly, the inclusion of lifetime parole in the defendant's sentence for conduct occurring prior to the effective date of section 903B.1 violates the ex post facto clause of the Iowa Constitution. *See State v. Simnick*, 779 N.W.2d 335, 340–42 (Neb. 2010) (holding statute authorizing lifetime supervision was an impermissible ex post facto law as applied to the defendant whose

crime was committed before the effective date of the statute). We vacate this part of the defendant's sentence.

### IV. Condition of Probation.

The defendant contends the district court abused its discretion in ordering him to have no contact with any person under eighteen years of age as a condition of his probation. The State asserts this condition is reasonable in view of the defendant's offense. We will interfere with the trial court's terms of probation only upon a finding of abuse of discretion. *See State v. Valin*, 724 N.W.2d 440, 444 (Iowa 2006). "The court abuses its discretion when its decision is based on untenable grounds or it has acted unreasonably." *State v. Millsap*, 704 N.W.2d 426, 432 (Iowa 2005).

As noted above, '[t]he legislature has given the courts broad, but not unlimited, authority in establishing the conditions of probation." *Jorgensen*, 588 N.W.2d at 687; *accord* 21A Am. Jur. 2d *Criminal Law* § 846, at 33 (2008) ("Although broad, the trial court's discretion to impose conditions of probation is not without limits[.]" (Footnotes omitted.)). Pursuant to Iowa Code section 907.6, conditions of probation must not be unreasonable or arbitrary. *State v. Rogers*, 251 N.W.2d 239, 243 (Iowa 1977). "A condition is reasonable when it relates to the defendant's circumstances in a reasonable manner and is justified by the defendant's circumstances." *Valin*, 724 N.W.2d at 446 (citations omitted). In assessing the court's exercise of discretion, we also keep in mind that probation is intended to "promote the rehabilitation of the defendant and the protection of the community." *State v. Ramirez*, 400 N.W.2d 586, 590 (Iowa 1987). A condition of probation promotes these dual goals "when it addresses some problem or need *identified with the defendant*." *Valin*, 724 N.W.2d at 446 (emphasis added). Thus, " '[t]he punishment should fit both the crime and the individual.' " *State v. Hildebrand*, 280 N.W.2d 393, 396 (Iowa 1979) (quoting *State v.*

*Cupples*, 260 Iowa 1192, 1197, 152 N.W.2d 277, 280 (1967)); *accord State v. August*, 589 N.W.2d 740, 744 (Iowa 1999). " ' "The court is not permitted to arbitrarily establish a fixed policy to govern every case." ' " *Hildebrand*, 280 N.W.2d at 396 (quoting *State v. Jackson*, 204 N.W.2d 915, 916 (Iowa 1973)); *accord State v. McKeever*, 276 N.W.2d 385, 387 (Iowa 1979) (stating "each [sentencing] decision must be made on an individual basis").

Additionally, "[a] condition [of probation] is not reasonable if it is found to be 'unnecessarily harsh or excessive in achieving [the] goals' " of rehabilitation and community protection. *United States v. Friedberg*, 78 F.3d 94, 96 (2d Cir. 1996) (quoting *United States v. Tolla*, 781 F.2d 29, 34 (2d Cir. 1986)); *accord Valin*, 724 N.W.2d at 446.

> [A] reasonable nexus must exist between any special condition of probation and the crime for which it is imposed. A condition of probation which requires or forbids conduct which is not itself criminal is valid [only] if that conduct is reasonably related to the crime of which defendant was convicted or to future criminality.

21A Am. Jur. 2d *Criminal Law* § 846, at 33–34 (footnotes omitted); *accord Jorgensen*, 588 N.W.2d at 687 (holding requirement that probationer participate in batterer's education program was unreasonable because defendant was acquitted of domestic abuse and had no history of such conduct); *State v. Stiles*, 197 P.3d 966, 969 (Mont. 2008) (holding condition prohibiting defendant from possessing or consuming alcohol was unreasonable under statute similar to section 907.6).

The defendant points to several perceived flaws in the no-contact probation condition, asserting this restriction is too broad, rendering it unreasonable and an abuse of discretion. We agree that the no-contact condition of the defendant's probation is unnecessarily excessive. Certainly, given the circumstances of the defendant's offense, it is reasonable for the

court to restrict the defendant's interaction with minors.[6]  But the condition imposed here literally prohibits any and all contact with any person under the age of eighteen regardless of how unintended, incidental, or innocuous such contact might be unless the defendant has obtained permission from his supervising officer.  *Cf. State v. Hall*, 740 N.W.2d 200, 204 (Iowa Ct. App. 2007) (ruling condition of probation that prohibited contact with minors was not unreasonable "because the restriction contain[ed] an exception for 'incidental contact in public places where other responsible adults are present' ").  Thus, without prior approval of his probation officer, the defendant risks a probation violation by simply leaving his house.  *See id.* ("A total ban on all communication with all minors without an exception for incidental communication where other responsible adults are present would, in effect, require [the defendant] to become a hermit.").  A walk to the local fast food restaurant may place the defendant in contact with children playing on the sidewalk, the paper boy delivering newspapers, or an underage clerk taking payment for his purchase.

The Vermont Supreme Court refused to enforce an almost identical probation restriction in *State v. Rivers*, 878 A.2d 1070, 1072 (Vt. 2005).[7]  In

---

[6]The court separately prohibited contact between the defendant and the victim and her family.

[7]In addition to the Vermont Supreme Court, intermediate courts of appeal in two states held in unpublished opinions that similar blanket no-contact conditions on probation were unduly restrictive.  *See State v. Lacey*, No. 23261, 2009 WL 4268572 (Ohio Ct. App., Nov. 25, 2009); *State v. Jones*, No. W2008–01877–CCA–R3–CD, 2010 WL 432418 (Tenn. Crim. App., Feb. 8, 2010).  In *Lacey*, the defendant was convicted of improperly furnishing a firearm to a minor. 2009 WL 4268572, at *1.  Relying on a prior unpublished decision of the same court involving a similar restriction on a convicted sex offender, the Ohio Court of Appeals held a probation condition that the defendant "have no contact with any non-relative under the age of eighteen" was "unduly broad, by prohibiting unintended, chance, and fleeting encounters with a juvenile that have no nexus with criminal conduct." *Id.* at *1, *2.  The court ruled the trial court erred in imposing the no-contact probation condition.  *Id.* at *2.  In *Jones*, the defendant was convicted of a sex offense and as a condition of his probation was "not allowed unsupervised contact with any minor child under eighteen years of age, including his own children."  2010 WL 432418, at *1.  The court held the term "unsupervised contact" rendered the condition "overbroad," "not properly defined," and

*Rivers*, a condition of the defendant's probation was the prohibition of any "contact with children under the age of sixteen without prior approval of the probation officer." 878 A.2d at 1076. The defendant was found to have violated this condition of his probation when he attended a local fair and stood in line near minors under sixteen years of age. *Id.* at 1071. Aside from the defendant's proximity to these minors, there was no evidence that he "physically touched, initiated or sought conversation with, or otherwise stalked any particular children." *Id.* at 1071–72. On the defendant's appeal from the district court's finding that he had violated the terms of his probation, the supreme court noted that the restriction in question was not specific to the defendant's victim nor was it limited to private locations presenting "greater dangers to the protected class and to a probationer's rehabilitation." *Id.* at 1074. This condition, the court pointed out, would require the defendant "to refrain from going to numerous public places where essential daily business is transacted." *Id.* The court stated:

> [T]his common probation condition could extend to any number of other public places where children are regularly present such as grocery stores, movie theatres, libraries, fast-food restaurants, parks, or even downtown streets all across Vermont where children often congregate in large numbers after school and during the summer months. When removed from the context of victim-contact or private locations where different considerations apply, such a broad rule severely restricts a probationer's liberty while doing little to rehabilitate the offender or prevent the behavior that led to the no-contact condition in the first place.

"unduly restrictive." *Id.* at *4. Noting the restriction would include "telephone conversations, emails, and letters," and "would also preclude the defendant from entering a retail establishment if the clerk was alone and happened to be under eighteen," the court ruled "the condition is too indefinite to be reasonable or realistic." *Id.* The court remanded the case to the trial court "to fashion a more defined and less limiting condition." *Id.*

*Id.* at 1075. The court concluded this "blanket no-contact condition" was "overbroad and unduly restrictive of probationer's freedom and autonomy" and lacked "sufficient precision." *Id.* at 1074, 1076.

For the same reasons, we conclude the challenged probation condition here is unreasonable, and the district court abused its discretion in imposing it. *See Hall*, 740 N.W.2d at 204–05 (holding restriction on defendant's communication with any child under eighteen years of age with no exception for incidental communication was unreasonably restrictive). We vacate the no-contact condition of the defendant's probation, and remand this case to the district court for the opportunity to fashion a more realistic and precise condition on the defendant's probation that would ensure he does not have contact with minors in situations that would jeopardize the safety of the community and the defendant's rehabilitation.

## V. Conclusion and Disposition.

That part of the defendant's sentence imposing lifetime parole under section 903B.1 violates the ex post facto clause of the Iowa Constitution. In addition, the condition placed on the defendant's probation prohibiting contact with any person under the age of eighteen without approval of his supervising probation officer is an abuse of discretion. Therefore, we vacate those parts of the defendant's sentence subjecting him to lifetime parole and imposing the blanket no-contact condition on his probation. To the extent the court of appeals reached contrary conclusions, we vacate the court of appeals' decision. This case is remanded to the district court for resentencing as directed in this opinion.

**DECISION OF COURT OF APPEALS VACATED IN PART; SENTENCE VACATED IN PART AND CASE REMANDED FOR RESENTENCING.**

All justices concur except Baker, J., who takes no part.