# IN THE COURT OF APPEALS OF IOWA

No. 22-0937
Filed December 20, 2023


**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**JAKE ROBERT SKAHILL,**
　　　　Defendant-Appellant.
_____


Appeal from the Iowa District Court for Dubuque County, Monica Zrinyi Ackley, Judge.


Jake Skahill appeals his convictions for second-degree sexual abuse, lascivious acts with a child, and enticing a minor. **CONVICTIONS AFFIRMED; SENTENCE VACATED AND REMANDED WITH INSTRUCTIONS.**


Martha J. Lucey, State Appellate Defender, and Ashley Stewart, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Sheryl Soich, Assistant Attorney General, for appellee.


Considered by Ahlers, P.J., Chicchelly, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**GAMBLE, Senior Judge.**

Jake Skahill appeals his convictions for second-degree sexual abuse, in violation of Iowa Code section 709.3(1)(b) (2018); lascivious acts with a child, in violation of section 709.8(1)(a); and enticing a minor, in violation of section 710.10(1). Skahill asserts the court erred in denying his motion to disqualify the presiding judge and in imposing consecutive sentences without adequate reasons.

*Background Facts.*

Our supreme court vacated Skahill's convictions after a prior trial concerning the same charges involving allegations made in 2018 that Skahill sexually abused his seven-year-old daughter K.W.[1] *State v. Skahill*, 966 N.W.2d 1, 4 (Iowa 2021). The supreme court concluded K.W.'s recorded Child Protection Center (CPC) forensic interviews were not admissible under the medical diagnosis exception. *Id.* at 10 (finding the interview was not conducted to seek a medical diagnosis). Nor were they admissible under the residual exception to the hearsay rule. *Id.* at 10, 15 (finding there are five requirements to the residual exception— "trustworthiness, materiality, necessity, service of the interests of justice, and notice"—all of which must be satisfied—and finding error because necessity had not been shown); *cf. State v. Maldonado*, 993 N.W.2d 379, 385–89 (Iowa Ct. App. 2023) (affirming admissibility of CPC interview under residual exception where all five requirements were shown). Because the court could not conclude admitting

---

[1] This is actually the third trial—the first ended in a mistrial due to the jury seeing evidence it should not have; the second trial ended with convictions, which were appealed, the convictions vacated, and the case sent back for this third trial.

the interviews at trial was harmless error, the court remanded to the district court for retrial. *Skahill*, 966 N.W.2d at 17.

The district court ordered Skahill's transport to jail on November 30, 2021. Skahill posted bond on January 18, 2022. That same day, the State filed a motion for bond modification, asserting the complaining witness "is in fear of the [d]efendant" and asking that the court require Skahill to report to pretrial services and be subject to GPS monitoring to ensure he made no contact with the child. On January 19, the court, by the same judge who had presided at the earlier trials, granted the State's motion to require pretrial services "[b]ased on the nature of the charges." On January 20, Skahill filed a resistance to the motion for bond modification and request for hearing, asserting the court had not provided adequate reasons for imposing different conditions of bond than before the previous trial and he had not been given appropriate notice or had the opportunity "to weigh in on the matter." On January 25, the court filed a written order, stating in part:

> Now that the Defendant has posted the cash bond, he is required to report to [the Department of Correctional Services (DCS)]. Standard pre-trial services are required, that in the case of a sex offender allegation require ankle monitoring. Additionally, the Defendant has always been subject to a no contact order and the court reiterated the conditions in its order. Violation of the no contact order is mandatory arrest per statute.
> The court will set a hearing however, to allow argument from the Defendant concerning the DCS requirements and how he believes he is exempt from the standard requirements for pretrial release conditions.

The court set Skahill's objections for hearing but declined to modify its prior order after that hearing.

*Recusal.*

The trial was scheduled to begin on April 26. On April 15, Skahill filed several motions, including a motion to disqualify the judge. Skahill asserted, "Based on the court's actions and statements the court has made on the record, the Defendant is concerned the court is not neutral, detached or impartial," citing statements made by the judge at his 2019 sentencing hearing, the pretrial conditions of bond, and the judge's statements at the bond review hearing.

At the combined pretrial hearing, the court rejected the motion to disqualify, stating:

> I had considered the possibility of maybe just having a whole clean slate, Mr. Skahill, so you just start completely over, but because it was a remand, the further that I thought about it and the research that I did over the weekend, if the supreme court had thought that I needed to step down, it would have directed that, and it didn't. The commentary that is quoted in the motion was commentary subsequent to two jury trials in a sentencing order. The second commentary was relative to the manner of approaching a request from the State to have you on the GPS monitoring system. I have no bias in this case from my perspective. All I want is the evidence to come out properly. I never intended for my rulings to cause the difficulties that we've had now in bringing this back again. I really just want the facts to be portrayed as they are. I want the jury to be able to render a decision be it one way or the other. I think that you deserve to have justice, you deserve to have your life directed in the manner in which it needs to be, as well as does the named victim and her family from her maternal side, so I will deny the Motion for Recusal.[2]

---

[2] The terms "motion to disqualify" and "motion to recuse" are used interchangeably. *See Taylor v. State*, 632 N.W.2d 891, 896 (Iowa 2001) (noting "recusal" is a synonym of "disqualification").

We also note, subsequent to this trial, our rules of criminal procedure were amended to no longer address motions for change of judge.

> Former rule 2.11(9) authorized a "motion for change of judge" . . . . References to the motion of change of judge have been deleted from revised rule 2.11 because they have been superseded by other sources of law relating to recusal and disqualification. *See, e.g.*, Iowa Ct. R. 51:2.11. While a litigant should certainly move for

On appeal, Skahill repeats his claims of bias made at the time of the pretrial hearing. But he also argues a "second instance of perceived bias took place during the trial with an exchange between defense counsel and the district court," which he asserts "amplifies" the court's inability to separate information provided in the previous trials." And he adds, "The final and arguably the most ardent example of potential bias occurred during Skahill's sentencing hearing . . . ."[3]

Our supreme court has stated, "There is a constitutional right to have a neutral and detached judge." *State v. Mann*, 512 N.W.2d 528, 532 (Iowa 1994). "Before recusal is necessary, actual prejudice must be shown." *State v. Biddle*, 652 N.W.2d 191, 198 (Iowa 2002). Because Skahill sought the court's disqualification, it is his burden to show grounds for recusal existed. *See id.*

"We review a judge's decision on a motion to recuse for abuse of discretion." *State v. Trane*, 984 N.W.2d 429, 433 (Iowa 2023) (citation omitted). When applying this standard, we are reminded "there is as much obligation for a judge *not* to recuse when there is no occasion for the judge to do so" as there is for the

---

disqualification of a judge when a legal ground for doing so arises, that is not the only way for disqualification to occur.
Iowa R. Crim. P. 2.11(4) cmt.

[3] Skahill did not renew his motion to recuse during trial or at sentencing, so these additional allegations were never considered by the district court, and we do not consider them on appeal concerning the issue of recusal. *See State v. Bynum*, 937 N.W.2d 319, 324 (Iowa 2020). However, we do consider the district court's statements at sentencing in determining whether a sentencing error occurred. *See State v. Lathrop*, 781 N.W.2d 288, 293 (Iowa 2010) ("[E]rrors in sentencing may be challenged on direct appeal even in the absence of an objection in the district court.").

judge to recuse when there is. *Id.* at 434 (emphasis added) (cleaned up for readability).[4]

> A judge should recuse when the judge's impartiality might reasonably be questioned. This is an objective test. Actual prejudice must be shown before recusal is necessary, and speculation is not sufficient.
> A judge's impartiality might be questioned when the judge has a personal bias or prejudice concerning a party. *But only personal bias or prejudice stemming from an extrajudicial source constitutes a disqualifying factor. Judicial predilection or an attitude of mind resulting from the facts learned by the judge from the judge's participation in the case is not a disqualifying factor.*

*Id.* (emphasis added) (cleaned up for readability).

Skahill's complaints do not address "personal bias or prejudice stemming from an extrajudicial source." *Id.* Rather, Skahill argues the court's knowledge from his prior trials has tainted its ability to be unbiased. *See In re C.L.C.*, 798 N.W.2d 329, 337 (Iowa Ct. App. 2011) ("[O]pinions formed by a judge 'on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deepseated favoritism or antagonism that would make fair judgment impossible.'" (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

Skahill's complaints are similar to those made by the defendant and rejected by our supreme court in *Trane*:

> We have considered all of [defendant]'s arguments, including his claims that the judge engaged in combative dialogue towards [defendant]'s counsel, assumed the role of prosecutor, threatened to eject attendees supporting [defendant], and made impermissible statements during sentencing. From our review of the record, however, we find no statements or actions suggesting that the judge acted from "personal bias or prejudice stemming from an extrajudicial

---

[4] We use the parenthetical (cleaned up for readability) to note all internal quotation marks, citations, and alterations have been omitted.

source." We note also that the judge issued a written order explaining his reasons for declining to recuse. In that order, we find no reasons to think that the court's decision was "based on untenable grounds" or that the court "acted unreasonably." Rather, the judge carefully considered [defendant]'s arguments—and also "examine[d his] own conscience"—before concluding there was "no basis for the recusal motion."

984 N.W.2d at 434. For the same reasons noted in *Trane*, we conclude Skahill has not shown that the district court abused its discretion by denying his recusal motion.

*Trial and Sentencing.*

At trial, evidence was presented that when K.W. was seven years old, she divided her time between her mother's house and Skahill's house. Each parent also had other children with different partners. K.W. recalled a time when she was sitting on Skahill's lap on a chair in his living room. Skahill "told the kids to go upstairs," which they did, and he told her to "stay downstairs." K.W. testified Skahill "took his penis from his pants, and then he told me to suck it, and I said no, and then he told me to wiggle it, and then I did." Skahill then put his hands inside of K.W.'s pants, underneath her underwear, and touched her "private parts." Skahill was interrupted when his wife came home. He told K.W. "not to tell anybody, that it's our little secret."

But K.W. told her mother what Skahill had done when they were together a few days later. The mother dropped K.W.'s brothers off at their grandmother's house and took K.W. to the emergency room, where K.W. told the doctor she was sleeping in a chair and woke up with her father touching her and "her bottom hurts." K.W. displayed a "[s]hort linear mucosal wound inferior and to the left of the urethral opening." K.W.'s mother took K.W. to the CPC the next day.

Skahill did not testify at trial. The defense called CPC medical director Regina Butteris to testify; she stated she did not see an injury to K.W.'s genitals when she examined her one day after K.W. visited the emergency room. Dr. Butteris testified that it would not be uncommon for the genital area to heal quickly.

The jury convicted Skahill of second-degree sexual abuse, lascivious acts with a minor, and enticing a minor. Skahill filed motions in arrest of judgment and for new trial.

At the combined hearing on posttrial motions and sentencing, the court stated:

> As you all know, I have sat now three times as the presiding judicial officer over the trial in this case, and I will honestly admit, it's very difficult to keep everything compartmentalized, but listening to the testimony from the most recent trial, I do find that the jury was able to make a decision. They had appropriate standards to follow, and based on the weight of what I find to also be credible evidence, I do believe that the verdict rendered . . . has been supported by favorable testimony that concludes the verdicts are credible. I agree with the State that there is nothing that supports the Motion in Arrest of Judgment under the Rules of Criminal Procedure. So for those reasons, the Court denies both motions, and therefore, I am prepared to proceed to sentencing.

The court noted that the updated presentence investigation (PSI) report recommendation was that the court impose the statutory prison terms to run concurrently for a twenty-five-year term. The court also noted the enticement and lascivious-acts convictions merged for a single term of ten years and the second-degree sexual abuse term carried a twenty-five-year term.

The State recommended that the court impose consecutive sentences, noting the "unique case" that had "seen a mistrial, a trial, an appeal, and now a

retrial. It has lived and survived with the obstacles in the court system created by COVID, and the victim here has shown that she is a survivor also."

The defense objected to two paragraphs of the PSI that had been used in the prior proceedings, which "specifically refer to all of the statements that were contained within the CPC interview, which were not admitted during the course of this trial, so we would ask the Court to not consider those, that they would be impermissible and non-prudent conduct at this point." The defense recommended that the court impose concurrent sentences as recommended by the department of corrections in the PSI. Defense counsel asserted,

> The State's recommendation for a consecutive sentence at this point would seem to punish Mr. Skahill for exercising his constitutional rights of which he was entitled to and what the [s]upreme [c]ourt found that he was eligible for, and so at this point, entering a consecutive sentence would be—would appear to be a punishment for him following the rights that he is entitled to by law.

K.W. and her mother provided victim impact statements. The mother stated K.W. "not only suffered at [Skahill's] hands from the sexual abuse but continues—but he continues to cause harm by denying the truth for years and forcing her to tell her story over and over again."

The court then imposed sentence, stating:

> As a result of the jury's findings, the Court is hereby entering the convictions for Counts I, II, and III already delineated with Code sections, and as I indicated, Counts II and III merge together. I do believe that the harm that has been suffered for this young lady, it is immense, and I said it before, that you can continue to believe that it didn't happen, but she believes it, and she's testified over and over and over again about what happened. Each time individuals have attempted to try to find ways to make her feel inappropriate, make her feel like she does not know what she's talking about, and to make her feel bad for what has occurred. She was [seven]. It's a long price. I want you to think about that. [Seven]. You took away so much from her. I take my own personal responsibility for what was

done here when I made my CPC ruling. I was trying to do what was fair, what was appropriate under the law, and what provided both you and her an appropriate remedy for representation in the court system. The Court of Appeals agreed with me, the [Iowa] Supreme Court did not. They felt that the CPC was an inappropriate manner and mechanism to present this information. I will say now on this record clearly, I disagree with them. I know I have to follow that law, and I did. But I disagree with them. Children who suffer at the hands of an older individual that perpetrated a sexual assault on them need to be protected. And [K.W.]'s mother is absolutely right. You've had lots of rights here. I've given you every possible mechanism to keep information before the juries. Every possible mechanism. But she hasn't been protected at all, and it's a real shame. After sitting on this bench for almost [twenty] years, it is a real shame to me that the court system continues to ignore victims, the trauma that they suffer, the harm that will never leave them. So having the CPC and giving them an opportunity to take away some of that and to only have her have to tell that story one time is a much better concept than making her come back over and over and over and over again. And your attorney is right. It is your right. The Constitution is there for a reason. But in the final end of the day, you have to think about what you did. You have to think about the harm. And you have to live with that. It's unfortunate that she has to also. And I've watched this young lady from the cute, cuddly and loving and bubbly little girl that she was in that CPC exam to come up here as a strong [eleven]-year-old, that if you didn't know age-wise, you could say she was a much more mature [sixteen]- or [seventeen]-year-old. She's eloquent, and she asked you a lot of very pertinent questions, and you have the right not to say anything, but you have yet to say, I'm sorry about the process. I didn't ask you, at any point in time, to admit anything, and neither did she. But you've never even just apologized for the process. And to say that a [seven]-year-old would be able to make all of this up just because she wanted to put you through this, you've never thought about it in the reverse. And I think it's unfortunate. And I will apologize again to the family. If it goes up on appeal, and the [Iowa] Supreme Court once again decides that I did the wrong thing, I am sorry. I do believe that she deserves protection, and I do believe that information needs to be before the jury. They need to know what's the information so that they can balance it and they can weigh the credibility. I repeat over and over to them that that's their job. And my faith in the criminal justice system has grown much stronger in the last year, since COVID has hit. I've seen juries put so much effort into rendering their decisions, and yours as well, as did the other jury. They never took this lightly. They were all extremely thought out, extremely heartfelt decisions and discussions that were had, and I appreciate very much what they did to try to syphon through all that they had before them. But I will

repeat to you again, they found her credible. And at some point, maybe when you get to that stage, you'll be able to tell her you're sorry for the process. Because she's lost a lot.

Considering all the statutory requirements that the Court has before it, the [twenty-five]-year term for Count I will be imposed. I don't have any discretion in that regard. With regard to the two counts that merge for the [ten] years, I find that it's appropriate at this phase to require that they be served consecutively. I think that that provides the most protection for the community, protection for the victim. I think that provides the rehabilitation that's necessary for the Defendant. It gives him the opportunity for all of the necessary treatment and therapy. That will include the sex offender therapy.

On appeal, Skahill contends his due process right to a neutral and detached judge was violated when the district court imposed a harsher sentence than imposed after the prior trial without an appropriate explanation.

"A claim of vindictiveness in sentencing implicates constitutional guarantees of due process, making our review of that issue de novo." *State v. Mitchell*, 670 N.W.2d 416, 418 (Iowa 2003). Where a harsher sentence is imposed upon reconviction, "for the purpose of punishing a defendant for exercising his rights in seeking to have the conviction set aside is a flagrant violation of due process of law,' the utmost scrutiny must be applied to ensure that the second sentence was not the product of vindictiveness." *Id.* at 423 (citation omitted)

The *Mitchell* court adopted the United States Supreme Court's "baseline approach to vindictiveness questions":

Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must *play no part in the sentence he receives after a new trial*. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence

upon a defendant after a new trial, the reasons for his doing so must affirmatively appear.[5] Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

*Id.* (emphasis added) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 725-26 (1969)).

Without conceding vindictiveness, the State acknowledges the district court did not affirmatively state its reasons for imposing a more severe sentence after retrial and agrees this case must be remanded for resentencing. And we cannot say Skahill's successful appeal played no part in the court's imposition of a harsher sentence. As quoted above, the sentencing court made mention numerous times about the appeal, the retrial, and the need for the child to repeat her testimony. The court identified no conduct on the part of the defendant occurring after the time of the original sentencing proceeding in support of the harsher sentence. Consequently, we affirm the convictions, vacate the sentence, and remand for resentencing before a different judge.

**CONVICTIONS AFFIRMED; SENTENCE VACATED AND REMANDED WITH INSTRUCTIONS.**

---

[5] But note, "when a different judge sentences a defendant after a retrial, *and* that judge articulates logical, nonvindictive reasons for the sentence, there simply is no sound basis to presume that the sentence is the product of judicial vindictiveness." *Mitchell*, 670 N.W.2d at 424 (citation omitted).