# IN THE COURT OF APPEALS OF IOWA

No. 22-1650
Filed November 8, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DARIUS LEJUAN WADE,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Buchanan County, Kellyann M. Lekar, Judge.


        Darius Wade appeals following his convictions for possession of a firearm or offensive weapon by a felon as a habitual offender and operating while intoxicated, second offense.  **AFFIRMED.**


        Martha J. Lucey, State Appellate Defender, and Mary K. Conroy, Assistant Appellate Defender, for appellant.

        Brenna Bird, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee.


        Considered by Greer, P.J., Badding, J., and Scott, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**SCOTT, Senior Judge.**

Darius Wade appeals his convictions following a bench trial for possession of a firearm or offensive weapon by a felon as a habitual offender and operating while intoxicated, second offense. Wade challenges the sufficiency of the evidence supporting the firearm conviction and the sentence imposed by the district court.

### I. *Background Facts and Proceedings*

From the evidence presented at trial, the court could have found the following. Early morning on October 1, 2021, Officer Brandon French was on stationary patrol in Jesup. Upon observing Wade's vehicle "traveling at a high rate of speed for [the] speed zone," French conducted a traffic stop. Wade completed "a delayed stop," and French approached the vehicle. "As [French] was standing up at the passenger side of the vehicle, [he] smelled an odor of burnt marijuana emitting from the interior of the vehicle . . . ." French asked Wade to accompany him to his squad car while he conducted his computer work. As the two sat "in a more condensed area together," French "continued to smell a strong odor of marijuana, . . . as well as the odor of ethyl alcoholic beverage, which was emitting from his person, that was being partially masked by the stronger odor of marijuana." Wade denied smoking marijuana or consuming alcohol.

Based on his observations, French conducted a search of Wade's vehicle. In the passenger area of the vehicle, he found a backpack that contained a 9mm handgun and a wallet with Wade's driver's license. French unloaded the gun, secured it, and brought it back to the squad car. Wade, who was on the phone, stated, "Oh shit, he found it" when French questioned him about the gun. Wade

acknowledged he was a felon, and he stated "if the gun was in the backpack, then it—he didn't know it was there." Wade failed field sobriety tests and declined a breath test.

The State charged Wade with possession of a firearm by a felon, a class "D" felony, as a habitual offender, in violation of Iowa Code sections 724.26(1), 902.8, and 902.9(1)(c) (2021), and operating while intoxicated, second offense, an aggravated misdemeanor, in violation of Iowa Code section 321J.2(2)(b). Wade waived his right to a jury trial. The matter proceeded to a bench trial, during which the court received evidence and heard testimony from French, Wade, and Wade's girlfriend. Following trial, the court found Wade guilty as charged.

Wade appealed. Additional facts will be set forth as relevant to the issues raised on appeal.

## II. Sufficiency of the Evidence

Wade challenges the sufficiency of the evidence supporting his firearm conviction. We review his challenge for legal error. *See State v. Lacey*, 968 N.W.2d 792, 800 (Iowa 2021). Our sufficiency review is the same for a bench trial as a jury trial. *State v. Myers*, 924 N.W.2d 823, 826 (Iowa 2019). The court's findings of fact have the effect of a special verdict—binding on appeal if supported by substantial evidence. *State v. Fordyce*, 940 N.W.2d 419, 425 (Iowa 2020). We view the record in the light most favorable to the court's decision. *Myers*, 924 N.W.2d at 827.

Wade contends the evidence "was insufficient to prove [he] had knowledge that the gun was present in the backpack, which is required for his conviction under section 724.26(1)." Specifically, according to Wade, under "the factors of

constructive possession . . . , the State failed to show [he] *knowingly* transported the gun and/or exercised control and dominion over it."

> A person who is convicted of a felony in a state or federal court, or who is adjudicated delinquent on the basis of conduct that would constitute a felony if committed by an adult, and who knowingly has under the person's dominion and control or possession, receives, or transports or causes to be transported a firearm or offensive weapon is guilty of a class "D" felony.

Iowa Code § 724.26 (defining the offense of possession of a firearm or offensive weapon). This statute "requires proof that an adjudicated felon has a firearm 'knowingly . . . under the person's dominion and control or possession.'" *State v. Reed*, 875 N.W.2d 693, 708 (Iowa 2016) (quoting Iowa Code § 724.26(1)).

Wade testified the gun was owned by his girlfriend, Kasandra. He stated Kasandra last drove his truck "[t]he night before" when she "went to work." The next morning, Wade "woke up, jumped in the truck, . . . and left" for work. Wade denied using the backpack; he stated Kasandra "use[d] it for work to carry her food in" and she also carried a gun in it. Wade testified the wallet in the backpack with his ID was "an old wallet I don't use."

Kasandra testified similarly. She stated she had a permit to carry,[1] she owned two handguns (including a 9mm), and she "carr[ied] at least one" with her at all times. According to Kasandra, on October 1, 2021, the 9mm "was in the backpack that [she] carried for lunch and stuff." She stated she "forgot" the backpack in the truck because she "was tired" when she got home from work and she never told Wade the gun was in the backpack.

---

[1] Kasandra's permit was issued in January 2020, and it was valid on the date at issue.

"Possession may be actual or constructive." *See id.* at 705. "Actual possession requires proof of a defendant's physical possession of the . . . firearms at some point in time." *See id.* at 705 n.5. Constructive possession occurs when the defendant knows of the contraband's presence and "has the authority or right to maintain control of it." *Id.* at 705 (citation omitted). Constructive possession may generally be inferred by a defendant's exclusive possession of premises where contraband is discovered. *State v. DeWitt*, 811 N.W.2d 460, 474 (Iowa 2012). When the premises is a vehicle not under the defendant's exclusive control, "we require additional evidence to connect the defendant to the controlled substance sufficient to support a conviction for possession." *Id.* at 475. Courts consider several factors "as guides in establishing proof of possession" in nonexclusive premises, including:

> (1) incriminating statements made by the person; (2) incriminating actions of the person upon the police's discovery of a controlled substance among or near the person's personal belongings; (3) the person's fingerprints on the packages containing the controlled substance; and (4) any other circumstances linking the person to the controlled substance. Further, when the premises is a vehicle, the court may also consider these additional factors: (1) was the contraband in plain view; (2) was it with the person's personal effects; (3) was it found on the same side of the car or immediately next to the person; (4) was the person the owner of the vehicle; and (5) was there suspicious activity by the person.

*State v. Maxwell*, 743 N.W.2d 185, 194 (Iowa 2008) (internal citations omitted); *see also Reed*, 875 N.W.2d at 705 ("Although the doctrine of constructive possession evolved in drug-possession cases, we apply the same principles in firearm cases."). "The factors are not exclusive, and all facts and circumstances are considered to determine whether a reasonable inference is created that the

defendant had knowledge and control over controlled substances." *DeWitt*, 811 N.W.2d at 475.

Here, the gun was found in a backpack, in the front passenger area of Wade's truck, and Wade was the only person in the truck that night. Kasandra acknowledged Wade "kn[e]w that [she] always had a gun in that backpack" on her way to and from work. And Wade acknowledged Kasandra did not have the gun that day because "it stayed in the truck."

In addition, when French asked Wade about the gun, Wade stated, "Oh shit, he found it" and hesitated to admit he was a felon. Wade then told the person he was talking to on the phone, "I'm going to be arrested. . . . I'll call you when I get in there." *See Reed*, 875 N.W.2d at 708 ("[P]roof [of knowledge of a gun and control over it] may consist either of evidence establishing actual knowledge by the accused, or . . . incriminating statements or [other] circumstances from which a jury might lawfully infer knowledge"). When French asked, "Why are you carrying it around?" Wade responded, "I didn't know it was in my backpack, if it was in my backpack, because it shouldn't have been in my truck." Later, Wade denied the backpack was his, but he acknowledged telling French it was his "[b]ecause everything in my house is mine . . . ." *Cf. State v. Turner*, 630 N.W.2d 601, 609 (Iowa 2001) ("Although Turner denied ownership of the gun, his statements indicated that he knew the gun was in the apartment."). Wade's wallet and ID were also inside the backpack.

Considering the evidence in the light most favorable to the State, we conclude substantial evidence supports Wade's conviction for possession of a firearm as a felon.

### III. *Sentencing*

For Wade's operating-while-intoxicated offense, the court sentenced him to serve two years but ordered all but seven days of the sentence suspended. For Wade's firearm offense, the district court sentenced him to serve an indeterminate term not to exceed fifteen years, with a mandatory minimum of three years, and the court suspended the prison sentence and placed Wade on supervised probation for "two to five years."[2] On appeal, Wade claims the court "entered an illegal sentence by failing to fix a definite term of years for probation."

"The length of the probation shall be for a period as the court shall fix but not to exceed five years if the offense is a felony or not to exceed two years if the offense is a misdemeanor." Iowa Code § 907.7(1). According to Wade, this provision "does not authorize the district court to order [him] to complete a range from two to five years of probation—an indefinite time period." Focusing on the word "fix" in section 907.7(1), Wade claims, "applying the plain language of Iowa Code section 907.1, at the time of sentencing, the district court must firmly set a definite amount of years that Wade will serve on probation."

"A challenge to an illegal sentence 'includes claims that the court lacked the power to impose the sentence or that the sentence itself is somehow inherently legally flawed, including claims that the sentence is outside the statutory bounds

---

[2] The court's written sentencing order stated:

> Pursuant to Iowa Code [s]ection 907.3(3), the defendant is placed on formal probation pursuant to Iowa Code [s]ection(s) 907.5, 907.6, 907.7 and 907.8, to the 1st Judicial District Department of Correctional Services ("Dept.") for a period of 2 - 5 years subject to rules and conditions of probation imposed by the Dept. on the probation continuum.

or that the sentence itself is unconstitutional.'" *State v. Lathrop*, 781 N.W.2d 288, 293 (Iowa 2010) (citation omitted). In interpreting statutes, "[w]e give words their ordinary meaning absent legislative definition." *State v. Davis*, 922 N.W.2d 326, 330 (Iowa 2019). "In determining the ordinary and fair meaning of the statutory language at issue, we take into consideration the language's relationship to other provisions of the same statute and other provisions of related statutes." *Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020); *see* Iowa Code § 4.1(38) ("Words and phrases shall be construed according to the context and the approved usage of the language . . . .").

> If the 'text of a statute is plain and its meaning clear, we will not search for a meaning beyond the express terms of the statute or resort to rules of construction.' If the language of the statute is ambiguous or vague, we 'may resort to other tools of statutory interpretation.'

*Doe*, 943 N.W.2d at 610 (citations omitted).

Here, we can begin and end our inquiry by considering the statute as a whole. Pursuant to section 907.7(1), "[Wade] could be ordered to be on probation for between two years and five years." *See State v. Blanchette*, No. 11-1602, 2012 WL 2411919, at *2 (Iowa Ct. App. June 27, 2012). "In determining the length of the probation, the court shall determine what period is most likely to provide maximum opportunity for the rehabilitation of the defendant, to allow enough time to determine whether or not rehabilitation has been successful, and to protect the community from further offenses by the defendant and others." Iowa Code § 907.7(4). However, a court or probation officer may discharge a defendant from probation upon a finding "that the purposes of probation have been fulfilled and fees imposed . . . have been paid." *See id.* § 907.9(1), (2); *see generally State v.*

*Pierce*, No. 07-0496, 2008 WL 2039314 (Iowa Ct. App. May 14, 2008). And the court may "reduce the length of the probation if the court determines that the purposes of probation have been fulfilled and the fees imposed . . . have been paid." Iowa Code § 907.7(3).

Considering this language, the district court was authorized to fix probation for a period not less than two years and not more than five years. *See State v. Fleshner*, No. 22-1035, 2023 WL 5601794, at *1 (Iowa Ct. App. Aug. 30, 2023) (noting the defendant "received a deferred judgment with two to five years of probation supervised by the department of correctional services"); *State v. Arnold*, No. 20-0915, 2021 WL 4592837, at *1 (Iowa Ct. App. Oct. 6, 2021) (noting the defendant "received suspended prison sentences and was placed on probation to the department of correctional services for two to five years"); *State v. Jordison*, 702 N.W.2d 513, 514 (Iowa Ct. App. 2005) ("[T]he extension of defendant's probation for more than five years from the time of sentencing is not authorized by statute."). It was within the court's discretion to set a range or a specific length for probation, so long as it fell between two and five years. Finding no error, we affirm the sentence imposed by the court.

Upon consideration of the issues raised on appeal, we affirm Wade's convictions and sentences for possession of a firearm or offensive weapon by a felon as a habitual offender and operating while intoxicated, second offense.

**AFFIRMED.**