**IN THE COURT OF APPEALS OF IOWA**

No. 24-0416
Filed March 19, 2025

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**RYAN MATTHEW ALLEN,**
     Defendant-Appellant.
_____

     Appeal from the Iowa District Court for Cerro Gordo County, Gregg R. Rosenbladt, Judge.

     A defendant appeals his sentence. **AFFIRMED.**

     Richard Hollis, Des Moines, for appellant.

     Brenna Bird, Attorney General, and Joshua Henry, Assistant Attorney General, for appellee.

     Considered by Greer, P.J., and Langholz and Sandy, JJ.

**GREER, Presiding Judge.**

Ryan Allen appeals his sentence after this court remanded for resentencing because the district court did not use a validated risk assessment tool when determining Allen's mandatory minimum sentence. *See State v. Allen*, No. 22-0152, 2023 WL 8069210, at *2–3 (Iowa Ct. App. Nov. 21, 2023) (noting that Iowa Code section 901.11(3) (2021) required the sentencing court to base its determination of the mandatory minimum term on a validated risk assessment). Allen asserts the district court got it wrong again; this time by considering improper and incorrect factors.

As part of his challenge, Allen contends the district court erred by considering an improper score in the Iowa Risk Assessment Revised (IRR), which classified Allen's employment as "unsatisfactory, or unemployed, or unemployable" even though he was employed in prison as a barber at the time of resentencing. Allen makes other unpreserved claims that we do not consider, including an argument that all these challenges amount to cumulative error. Following our review, we find Allen failed to preserve error as to two of his three challenges, and thus, we could not find any cumulative error. As to his IRR employment challenge, we find the court properly exercised its sentencing discretion when considering the IRR. We affirm Allen's sentence.

**Background Facts and Proceedings**

On August 7, 2021, Ryan Allen broke into a Dairy Queen through its roof and attempted to steal cash from the establishment's safe. Our court previously summarized the facts of Allen's underlying offense as:

> "You know what, screw it. I've already broken the law, I'm already here, I'm going to try to get into the safe." That's what Ryan Allen thought after he broke through the Dairy Queen (DQ) roof and dropped into the closed business. Allen told the jury it was an inside job, that a former DQ manager gave him the safe code, but it didn't work. In desperation, he tried to pry open the safe with a hammer and other tools he came across in the storage room. As he struggled to access the cash, in walked A.P.—the DQ employee in charge of opening that morning.
>
> According to A.P., Allen threatened her and put her in fear of serious injury. He denied it. The jury believed her, convicting Allen of second-degree robbery. The district court imposed a prison sentence not to exceed ten years with a sixty-five percent mandatory minimum.

*Id.* at *1. On direct appeal, Allen argued there was insufficient evidence to support his conviction and the district court erred when it imposed sentence without a validated risk assessment, in violation of section 901.11(3). *Id.* This court found sufficient evidence underlying his conviction but agreed with Allen that the district court was to consider a validated risk assessment during sentencing. *Id.* at *2–3. Ultimately, we remanded for resentencing. *Id.* at *4.

On remand, the district court ordered an amended presentence investigation (PSI) report that was to include a validated risk assessment. The Iowa Department of Corrections completed an updated Iowa Risk Assessment Revised (IRR) for Allen on January 22, 2024. In an additional order, the district court clarified an IRR was prepared and included as part of Allen's PSI report, but the sentencing court was "uncertain as to the meaning" of the assessment and was then informed that the following information should have been included:

> As a part of the PSI process, [Allen] was assessed using the [IRR]. The IRR is an assessment tool with a focus on prediction of new violent and/or property crime and is used to assign initial level of supervision in the community. [Allen] scored in the low category for probability of future violence and the moderate/high category for

probability of future victimization. The assessment is attached to this report.

But, at sentencing, Allen contended that the characterization of a moderate/high category for probability of future victimization was flawed because the IRR showed he was "unsatisfactory, or unemployed, or unemployable" when he had employment in prison. The district court reviewed the PSI report and the IRR and considered the nature of the offense, Allen's age, family and employment history, acceptance of responsibility, criminal history, protection of society, and rehabilitation. The State argued for a mandatory minimum sentence of seventy percent, and Allen advocated for a fifty percent mandatory minimum. The court imposed a sentence of no more than ten years, with a mandatory minimum of sixty percent, a five percent reduction from Allen's initial sentence.

Allen appeals.

**Standard of Review.**

"We review sentencing decisions for an abuse of discretion when the sentence is within the statutory limits." *State v. Gordon*, 921 N.W.2d 19, 24 (Iowa 2018). We assume that a sentence that falls within the statutory parameters is valid. *State v. Wickes,* 910 N.W.2d 554, 572 (Iowa 2018). And that presumption is only overcome by an affirmative showing of an abuse of discretion or consideration of improper factors. *See id.* An abuse of discretion occurs when "the district court exercises its discretion on grounds or for reasons that were clearly untenable or unreasonable." *State v. Thompson*, 856 N.W.2d 915, 918 (Iowa 2014). "To establish reversible error based on an improper sentencing factor, the defendant is required to show that the court was not just merely aware

of the factor, but that it relied on the factor in determining its sentence." *State v. McCollaugh*, 5 N.W.3d 620, 627 (Iowa 2024).

**Discussion.**

Allen challenges his sentence, arguing the district court erroneously characterized his employment status, impermissibly considered offenses not at issue in this matter, and failed to offset his current probation revocation against his past early discharge from probation. He claims the cumulative effect of these errors resulted in a more severe sentence than was warranted.

*Unpreserved Challenges.*

The State asserts that Allen did not preserve error on several of his challenges and as to the one where error was preserved, the district court did not consider any improper sentencing factors. Allen claims he preserved error as to his three arguments because an illegal sentence may be challenged at any time. *See State v. Lathrop*, 781 N.W.2d 288, 293 (Iowa 2010) ("[E]rrors in sentencing may be challenged on direct appeal even in the absence of an objection in the district court. Illegal sentences may be challenged at any time, notwithstanding that the illegality was not raised in the trial court or on appeal"). But Allen's first two arguments do not challenge his sentence as imposed by the court; he challenges information in the PSI report, which the sentencing court relied upon as a sentencing consideration.

Iowa courts have explicitly recognized that challenges to information included in the PSI report fall under a type of "exception from the exceptions" regarding error preservation—most sentencing challenges need not comply with traditional error preservation rules, but challenging information in the PSI report

does. *See State v. Chawech*, 15 N.W.3d 78, 85 (Iowa 2024). "[I]f the defendant fails to object to alleged defects in the [PSI] report prior to the entry of sentence, the defendant will not be allowed to attack the sentence based on those defects." *Id.*

Allen failed to object to portions of the PSI report that make up the basis for his second and third claims, thereby failing to preserve error. During sentencing, Allen told the court he received and reviewed the amended PSI report before sentencing. With advanced opportunity to do so, *see* Iowa Code § 901.4 (2024), Allen chose not to formally object to elements of the PSI report in writing. *See State v. Martin*, 2 N.W.3d 271, 276 (Iowa 2024) ("Despite receiving the [PSI] report well in advance of the sentencing hearing, Martin presented no evidence to show that the district court abused its discretion by considering the information in it."). During sentencing, the court asked if Allen had "any changes, objections, or corrections to make" to the PSI report, which included the IRR incorporated into the PSI report. Allen neglected to object to the point allocations in the IRR that underpin his second and third claims on appeal—two points for "two or more current counts," when he was charged with one criminal count and a total of four points for a two-decades-old probation revocation.

By not objecting to these particular sections, we find Allen did not preserve error to his second and third claims. Accordingly, we also decline to discuss the merits of his arguments or his assertion that all of the errors had a "cumulative effect" on his sentence.

*Employment Risk Factor in the IRR.*

As to his preserved challenge—the IRR assessment related to stability factors—Allen objected to the IRR report's classification of his employment status as "unsatisfactory, or unemployed, or unemployable." As Allen sees it, because that inaccurate employment classification in the IRR made his score on the risk assessment higher, the district court considered an "improper sentencing factor," which warrants resentencing. But as noted above, Allen had to "overcome the presumption in favor of the sentence by affirmatively demonstrating the court relied on an improper factor." *State v. Goble*, 4 N.W.3d 700, 704 (Iowa 2024) (quoting *State v. Damme*, 944 N.W.2d 98, 106 (Iowa 2020)). And here, where the improper factor relates to the risk assessment tool, Allen had to object to the factor and make the appropriate record before sentencing to show the district court would abuse its discretion by considering the information. *See Martin*, 2 N.W.3d at 275–76.

There are two problems with Allen's challenge. First, while Allen objected to the IRR employment classification, he failed to show how the IRR was inaccurate. And second, Allen cannot show that the district court relied upon the claimed improper factor in making the sentencing decision.

We start with the record made at the sentencing related to the employment stability factor. As stated in the addendum to the PSI report, the risk assessment is used to gauge and report the risk posed to the community so as "to assign initial level of supervision in the community." It follows then that the behavior of an individual in the community and their employment history in the community would be a focus of the risk assessment. Allen, by his own account, was unemployed before incarceration and readily stole from others to pay his debts. From the record

made at the resentencing hearing, the district court would not know whether the employment information solicited by the IRR was designed to take into account employment after the individual was removed from the community, during incarceration. If all employment information, including employment in prison, was to be included in the IRR, it was Allen's burden to make an affirmative showing the IRR was inaccurate. *See id.* at 275 ("The district court does not abuse its discretion by considering risk assessment information in a [PSI] report where a defendant has notice of the risk assessment and fails to present evidence exposing some actual unsoundness in it."). Without evidence to the contrary, we find the IRR, incorporated into the PSI report and used during sentencing, is presumed to be a proper sentencing consideration, consistent with the "strong presumption" the sentence imposed by the court is valid. *See State v. Schooley*, 13 N.W.3d 608, 619 (Iowa 2024) ("Absent consideration of an improper factor, a district court's sentencing decisions are cloaked with a strong presumption in their favor. This is a heavy burden." (internal citation omitted)).

But even with concerns on how the employment factor was applied, we find the district court carefully considered Allen's position, in any event. During the sentencing hearing, Allen clarified his employment in prison. First, included in the PSI report was Allen's then-current work schedule, "[Allen] currently works Monday to Friday cutting hair for the men arriving at [the facility] and for the men who are leaving. He works 96 hours every two weeks and is paid []58 cents per hour." General information was presented during sentencing; Allen's counsel addressed the employment issue to the court:

DEFENSE COUNSEL: Your Honor, I'm not sure how [the IRR section describing employment status] fits in with the employment and the notification that it was unsatisfactory or unemployed or unemployable. I guess I take it that that means back then, because certainly, in his current state, that's not the case.

. . . .

THE COURT: And that does indicate they've got a mark there unsatisfactory or unemployed or unemployable, and if I remember correctly, Mr. Allen's original PSI [report] was done in jail. And then when this risk assessment was done, he would have been incarcerated in prison. And so I think that's probably the—I'm not sure why they check what they check, but I think that probably was the status.

DEFENSE COUNSEL: Well, the reason I bring it up is because I believe that it would change the risk scores and make the victimization much less, and so that's why I think it should be considered that he was employed or that he is employed now in prison. He is doing the work there that he can do. So that would be my objection to that number, that score, Your Honor.

THE COURT: Okay.

DEFENSE COUNSEL: Just so the court knows.

THE COURT: All right. So I'll take that into consideration and then you can make argument on that, but I think your comments have clarified the situation there.

During Allen's allocution, he told the court, "I've completed my barber apprenticeship program, which consists of classwork as well as 2000 hours of on-the-job training." After arguments and allocution, when the court addressed individual portions of the IRR, the court stated, "[E]mployment. [Counsel] talked about that, and the Court is aware of your situation there regarding employment." In response, counsel interjected:

DEFENSE COUNSEL: Your Honor, before you do that, I would point out that the next-to-the-last sentence in the addendum above does say that the defendant scored in the low category for probability of future violence and the moderate/high category for probability of future of victimization. I would argue that it should be the low-to-moderate category of future victimization because of the employment.

THE COURT: All right. And that's a good point, [Counsel] . . . .

The sentencing hearing, taken as a whole, shows the district court was aware of Allen's employment status and understood the employment classification's effect on IRR scoring. The court recognized the nuance of Allen's situation before determining sentence.

After the imposition of sentence, the court elaborated on its decision, stating, "I'm also noting here I'm factoring in and was going to say it but I didn't, your allocution. And it sounds like you've been positive down there. So that is going to cause me to lower the minimum somewhat, factor that in as well." We understand the district court's final statement as a nod to Allen's improvements in prison, including his apprenticeship and employment. The positive connotation of the district court's final statement, which indicates the court took into account Allen's employment history, conflicts with Allen's argument on appeal. *See State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002) ("[T]he decision of the district court to impose a particular sentence within the statutory limits is cloaked with a strong presumption in its favor, and will only be overturned for an abuse of discretion or the consideration of inappropriate matters. An abuse of discretion will not be found unless we are able to discern that the decision was exercised on grounds or for reasons that were clearly untenable or unreasonable."). Allen failed to make this showing.

We find the district court properly exercised its discretion in making the resentencing decision and affirm the sentence imposed.

**AFFIRMED.**