## DANFORTH, DAVIS & CO. *v.* CARTER and MAY.

By section 1852 of the Code, two grounds are given, for either of which a party may sue out an attachment.

In both instances, the plaintiff must state that nothing but time is wanting, in order to fix an absolute indebtedness.

In one case, in addition to this allegation, he must state that the defendant is about to dispose of his property, with intent to defraud his creditors.

In the other case, the plaintiff must allege, that the defendant is about to re-move from the state, and refuses to make any arrangement for securing the payment of the debt when it falls due, and that such contemplated removal was not known to the plaintiff, at the time the debt was contracted.

The averment " that defendant refuses to make any arrangement for securing the payment of the debt, when it falls due," applies alone to the case where the debtor is about to remove from the state; and. has no relation to the averment, that " he is about to dispose of his property with intent to defraud his creditors."

*Crew et al.* v. *McClung*, June term, 1853, overruled.

Where a plaintiff seeks to secure a matured debt, and one not yet matured, in the same proceeding, and makes an affidavit for an attachment, good as to one, but defective as to the other, the attachment should not be dissolved as to both claims.  It may properly be dissolved as to one, and sustained as to the other.

Danforth, Davis & Co. v. Carter and May.

A petition for an attachment, to secure a debt matured, and one not matured, which alleges that the defendants are about to dispose of their property, with intent to defraud their creditors, and that nothing but time is wanting to fix an absolute indebtedness as to the amount not due, is sufficient to sustain an attachment as to both claims.

Our system of practice, contemplates clearness in specification in all pleadings; and in all demurrers and motions, the true ground of objection should be distinctly and specifically stated.

The technical forms of pleading are abolished, but essential substance is designed to be preserved.

Where a demurrer or motion is not thus specific, the court may disregard it.

Where a bond for an attachment was signed by the plaintiffs in their partnership name, and by their attorneys as sureties, in their partnership name, and where the defendant moved to dissolve the attachment, for the reason "that the plaintiffs gave no such bond as the statute requires upon suing out the attachment," and because "they gave no bond," which motion was sustained; *Held*, 1. That the bond being executed in a legal proceeding instituted for the purpose of securing and collecting a firm debt, is so far legitimately connected with their partnership business, that the plaintiffs would be bound, for that reason; 2. That after such bond has been executed, and approved by a sworn officer, and after the sureties have engaged in prosecuting the suit, the bond is valid as against the sureties in their partnership name; 3. That upon a motion of this character, where the bond is apparently all regular and sufficient, the attachment should not be dissolved.

The manner of signing bonds with the partnership name in legal proceedings, is not as regular, and safe in respect to the rights of parties, as a proper practice in all cases, would seem to require, and should be discouraged.

## Appeal from the Dubuque District Court.

THIS suit was instituted to recover an amount claimed on three promissory notes, on which an attachment issued. One of the notes was not due at the time of the commencement of the suit. A bond was filed, regular in all its parts and conditions, and was signed by plaintiffs, and by Smith, McKinlay & Poor, each in their partnership style and name. The petition for the attachment, was sworn to, and alleged that about eight hundred dollars of the plaintiffs' demand was due, and that the remaining portion would become due at a time specified; that defendants were about to dispose of their property, with intent to defraud creditors, and that

nothing but time, was wanting to fix an absolute indebted-ness as to the amount not due. At the appearance term, the defendants moved to dissolve the attachment, because the petition did not set forth any legal cause for an attachment, and because the plaintiffs gave no such bond as the statute requires upon suing out the attachment, and for the reason that they gave no bond. This motion was sustained, and attachment dissolved, from which order plaintiffs appeal.

*Smith, McKinlay & Poor*, for the appellants.

*Clark & Bissel*, for the appellees.

WRIGHT, C. J. (1)—The errors assigned involve alone, the correctness of the ruling in the court below in dissolving the attachment. Two grounds are relied upon to sustain this order. *First*, that the affidavit for the attachment is in-sufficient. *Second*, that no proper bond was filed.

We will first consider the affidavit, so far as it relates to the debt not due. To determine this, involves a construction of section 1852 of the Code, which provides, that "the property of a debtor may be attached previous to the time when the debt becomes due, when nothing but time is want-ing to fix an absolute indebtedness, and when the petition, in addition to that fact, states that the defendant is about to dispose of his property with intent to defraud his creditors; or that he is about to remove from the state, and refuses to make any arrangement for securing the payment of the debt when it falls due, and which contemplated removal, was not known to the plaintiff at the time the debt was contracted." That the affidavit in this case, complies with this section, we should entertain no doubt, but for a decision (to an ab-stract of which our attention has been directed), made by our predecessors, at the June term, 1853. We refer to the case of *Crew et al.* v. *McClung*. We can find no opinion,

---

(1) Isbell, J., doubting as to so much as relates to the sufficiency of the bond.

and hence have great difficulty in ascertaining how the question arose, or what was the reasoning used in giving the construction. The abstract is, that "in order to authorize the plaintiff to an attachment, against defendant, when the debt is not due, the petition must set forth, in addition to the other requirements of the Code, that he refuses to make any arrangement for securing the payment of his debt when it falls due; and in case of removal, which contemplated removal was not known to the plaintiff at the time the debt was contracted." From this abstract, we conclude, that it was held, that the affidavit, when it alleged that the defendant was about to dispose of his property with intent to defraud his creditors, should also state, that nothing but time was wanting to fix an absolute indebtedness, and that defendant also refused to make any arrangement for securing the payment of the debt, when it falls due. If we are correct in this supposition, we are constrained to say, that such is not our view of the law. We have great reluctance in holding otherwise, but being unhesitatingly unanimous in our conclusion, that the construction given is improper, we believe it to be our duty to declare at this time, when the question first arises, what we believe to be the law.

The averment that defendant refuses to make any arrangement for securing the payment of the debt, when it falls due, we think applies alone to the case where the debtor is about to remove from the state, and has no relation to the averment that "he is about to dispose of his property, with intent to defraud his creditors." Under this section, we think, two grounds are given, for either of which a party may have an attachment. In both instances, he must state that nothing but time is wanting, in order to fix an absolute indebtedness. In one case, in addition to this, he must state, that the defendant is about to dispose of his property, with intent to defraud his creditors. In the other, that defendant is about to remove from the state, and refuses to make any arrangement for securing the payment of the debt, when it falls due, and that such contemplated removal was not known to the plaintiff at the time the debt was contracted. This

appears to us, to be the plain reading of the law, and in entire accordance with its reason and spirit. The averment as to the refusal to make any arrangement, does not appear, from the construction of the section, to have any logical or legitimate relation to the disposition of property, with intent to defraud; but each is separate and independent. But let us look for a moment to the reason and policy of this statute. In the one case, the affiant must not only believe that the debtor is about to dispose of his property, but he must also believe that it is about to be done with an intention to defraud creditors. The averment of fraud, is an essential requisite in an affidavit, and this, because it is not every disposition of property, that will warrant an attachment; but there must be the belief and averment that fraud is about to be perpetrated. We also know, that such fraudulent transfers are uniformly designed to be made without imparting knowledge to creditors, and with such dispatch, as to avoid any intervening legal process. To say that there has been a refusal to make any arrangement to secure, necessarily presupposes a previous request on the part of the creditor. And, therefore, the construction, as it now stands, would imply a request on the part of a creditor for security, and a refusal on the part of a debtor, who is about to commit an act fraudulent as against such creditors, and which fraudulent act he hastens, and perhaps renders certain, by requesting security. The debtor has the intention to carry out the fraud; is about to do it; the creditor must be active to forestall his action; but before he can do so, must go to him and demand security, thereby advise him of his fears and intention of being secured by legal process; and thus, instead of leaving him to act promptly in securing his debt, you require him virtually, to do that which throws him into the power of a fraudulent debtor. We have supposed that the request and refusal take place, after the creditor has reason to believe that the fraudulent intent existed, for it is seldom that the creditor, in any other state of the case, would require security before his debt matured.

We cannot believe that this was ever the design of the

legislature in enacting this section. In the case of a contemplated removal from the state, there need not be a fraudulent intent on the part of the debtor, to justify the attachment. That goes upon the supposition, that he is about to remove beyond the jurisdiction of our courts, so that the debtor will be left, to a great extent, if not entirely, remediless, unless he can secure his debt. In such case, if security is refused, and plaintiff was not aware of such removal when he gave the credit, he has a right to the attachment process. In the one case, he is dealing with a fraudulent debtor; in the other, not; and it is but reasonable that he should be required to exact security of the latter, but not of the former, to entitle him to this remedy. A contemplated disposition, with a fraudulent intention on the part of the debtor, has uniformly, by the legislation of most, if not all the states (as well as by our own), been regarded as sufficient for an attachment. We cannot believe that this section was designed to make an innovation on this uniform legislation, and especially so, when it is not warranted by the language or context, and when such innovation would imply, in effect, that a plaintiff must give a corrupt debtor notice that he must be speedy and active in carrying out his fraudulent intent, or he (plaintiff) should forestall his action by attachment.

Entertaining these views, we conclude that the court below erred in sustaining the motion, so far as related to the debt not due, for any defect in the affidavit. The petition follows literally the words of the statute. If a plaintiff seeks to secure a matured debt, and one not matured, in the same proceeding, and makes an affidavit good as to one, but defective as to the other, we see no reason for dissolving an attachment entirely as to both claims. It may properly be dissolved as to one, and sustained as to the other.

We next inquire, was this affidavit sufficient as to the debt due? And here we perhaps would be justified in saying, that inasmuch as the motion was general, and did not distinguish in its specifications, defects as to the matured and non-matured portions of the plaintiff's demands, and

the affidavit not being defective as to both, the court should, therefore, have overruled the motion as a whole, upon the same principle, that when a general demurrer is filed to a petition, or declaration containing several counts, one of which is good, it should be overruled as to all. But without placing our determination on a rule so strict, we will dispose of the objection, as if it was sufficiently specific. In the case of *Lockard & Co.* v. *Eaton* (November term, 1852, for the third district), a construction was given to section 1848, of the Code, according to which this affidavit is clearly good. And while we do not wish to be understood as concurring in the construction there given, to the entire section, it is sufficient for the purposes of the present case, to say, that we see no reason for changing the ruling there made as to the cause which is the foundation of this attachment. And more especially so, as we would be unwilling to believe, under the language of the section, and the whole policy and reason of the law, that it was designed that a party should have an attachment for a less cause when his debt was not due, than when it was; or to reverse the proposition, that he should be required to state more where his right of action was complete and perfect as to time, than where it was not thus perfect.

The remaining inquiry relates to the bond and its sufficiency. In the statement of the case, we have quoted the exact language of the motion, so far as it relates to this cause. We have done so, because of its general language, and to call attention to an error that prevails too much in practice, and which we seek to remedy. Our system of practice contemplates clearness in its specification in all pleadings. In all demurrers and motions, the true ground of objection should be distinctly and specifically stated. Technical forms of pleadings, it is true, are abolished, but essential substance is designed to be preserved. A part of the legal substance is, that parties shall be advised by all motions, demurrers, and pleas, what specific defect is aimed at, and what is the issue made, and not be surprised, even in the appellate court, by having defects pointed out, and is-

sues made, that are not indicated by such motion and pleas; and which defects might have been cured, if the party having the defective pleading, had been advised of the claimed defect by proper specification. Our courts should enforce this system, as it is eminently just and reasonable, and well calculated to prevent surprise and prejudice to the parties.

For these reasons alone, we might be justified in saying, the court below should have disregarded so much of the defendants' motion, as relates to the attachment bond. And had it been so disregarded, we should not have been inclined to disturb such ruling. It will not become necessary, however, to apply this rule in this instance, for we conclude that the motion should have been overruled for other reasons. The specific objection urged in argument by counsel is, that plaintiffs, and Smith, McKinlay & Poor, have no right to sign such bonds in their partnership names, and that a bond, so signed, affords no such security to the defendants, as the law contemplates. The bond is not under seal, and need not be. Private seals are abolished by the Code, and all instruments signed by the party to be bound, import a consideration, in the same manner that sealed instruments formerly did. Sections 974, 975. So far as the principals in this bond are concerned, we think, that being executed in a legal proceeding, instituted for the purpose of securing and collecting a firm debt, it is so far legitimately connected with their partnership business, that they would be bound for that reason. Again, as to the principals as well as the sureties, there is nothing to show but that the members of both firms were all present, and the bond signed with their entire knowledge and consent. If so, or such assent was afterwards given, there can be no doubt but all would be bound. This assent or authority may be implied from circumstances. Story on Part. 117, 120; *Mackay* v. *Bloodgood*, 9 John. 285; Collyer on Part. 467, note 1; *Gram* v. *Seaton*, 1 Hall, 262.

And now, after such bond has been executed and approved by a sworn officer, whose duty it is to know that the parties signing have the power to execute, as well as that

they are sufficient security, and after such sureties have engaged in prosecuting and conducting this cause in this, and the court below, we would not feel justified in saying, that it is so far invalid as to amount to no bond. *Prima facie*, we think, the undertaking is sufficient, and affords to the defendants the security they are entitled to for any injury sustained. We may say, however, that this manner of signing is not as regular and safe in respect to the rights of defendants, as a proper practice, in all cases, would seem to require. It should, therefore, be discouraged, and clerks should require individual names as sureties. But upon a motion of this character, we cannot think the court below was warranted in dissolving this attachment, when the bond is apparently all regular and sufficient.

Judgment reversed.