# IN THE COURT OF APPEALS OF IOWA

———————————

No. 24-1999
Filed April 1, 2026

———————————

**State of Iowa,**
Plaintiff–Appellee,

v.

**Jesse Arnold Hunter,**
Defendant–Appellant.

———————————

Appeal from the Iowa District Court for Boone County,
The Honorable Ashley Beisch, Judge.

———————————

**AFFIRMED**

———————————

Martha J. Lucey, State Appellate Defender, Cory Engle (until withdrawal)
and Melinda J. Nye, Assistant Appellate Defenders, attorneys for appellant.

Brenna Bird, Attorney General, and Joshua Henry, Assistant Attorney
General, attorneys for appellee.

———————————

Considered without oral argument
by Chicchelly, P.J., and Buller and Langholz, JJ.
Opinion by Chicchelly, J. Concurrence *dubitante* by Buller, J.

1

**CHICCHELLY, Judge.**

Jesse Hunter challenges the district court's entry of a no-contact order after a jury convicted him of assault causing bodily injury. At sentencing, the district court sentenced him to one year in jail with all but thirty days suspended and placed Hunter on probation. At sentencing, the district court terminated the previously entered temporary no-contact order between Hunter and the victim and replaced it with a five-year permanent no-contact order. Hunter argues the new no-contact order was an illegal sentence because the district court failed to make factual findings, explain its reasoning, or outline the evidentiary standards it based its decision on. Upon our review, we affirm the district court's entry of a permanent no-contact order.

At the threshold, the State challenges our jurisdiction to hear this appeal. Iowa Rule of Criminal Procedure 2.72(1) provides "an appeal may only be taken by the defendant and only upon a judgment of conviction." And Iowa Code section 814.6 (2024) provides criminal defendants a right of appeal from final judgment of sentence. So, we must decide whether the no-contact order is a part of Hunter's sentence.

"In determining whether a provision can be challenged as an illegal sentence, the relevant question is whether the provision was included in the sentencing order." *State v. Boruch*, No. 14-1757, 2016 WL 4801325, at *5 (Iowa Ct. App. Sep. 14, 2016). Here, the sentencing order indicated "the No Contact Order previously entered is extended by separate order." And because the no-contact order was extended as part of Hunter's sentencing order, we conclude it was part of his sentence. And we find there is an appeal as a matter of right based on the phrasing of the district court's order in this

2

case. *See* Iowa Code § 814.6. So, we conclude we have jurisdiction over Hunter's direct appeal.

Next, the State contests error preservation because Hunter never objected to the entry of the no-contact order in the district court. Hunter responds that the entry of the no-contact order is a procedurally defective sentence. *See State v. Chawech*, 15 N.W.3d 78, 83–84 (Iowa 2024) (holding procedurally defective sentences are among the exceptions to error preservation). Given this appeal concerns a challenge to a no-contact order entered at sentencing, we find error preservation was not required given recent guidance from our supreme court. *See State v. Kieffer*, 17 N.W.3d 651, 662 (Iowa 2025) (considering a challenge to a firearm prohibition contained in a no-contact order included in the defendant's sentence absent an objection in district court); *State v. Hall*, 740 N.W.2d 200, 202 (Iowa Ct. App. 2007) (considering a constitutional challenge to no-contact order included in the defendant's sentence over the state's argument that the issue was not preserved because it was not presented in district court); *see also State v. Hallock*, 31 N.W.3d 36, 42–43 (Iowa 2026) ("[W]e have observed that it is 'exceedingly unfair to urge that a defendant, on the threshold of being sentenced, must question the court's exercise of discretion or forever waive the right to assign the error on appeal.'" (quoting *State v. Cooley*, 587 N.W.2d 752, 754 (Iowa 1998))).

Turning to the merits, we review the entry of a permanent no-contact order under Iowa Code section 664A.5 for correction of errors at law. *State v. Epping*, 878 N.W.2d 277, 278 (Iowa Ct. App. 2016); *see also State v. Demers*, No. 23-0367, 2024 WL 960915, at *2 (Iowa Ct. App. Mar. 6, 2024). At sentencing, the district court terminated the previously entered no-contact order and entered a new five-year permanent no-contact order. The

procedure for the entry of this permanent no-contact order is outlined in Iowa Code section 664A.5:

> If a defendant is convicted of, receives a deferred judgment for, or pleads guilty to a public offense referred to in section 664A.2, subsection 1, or is held in contempt for a violation of a no-contact order issued under section 664A.3 or for a violation of a protective order issued pursuant to chapter 232, 235F, 236, 236A, 598, or 915, the court shall either terminate or modify the temporary no-contact order issued by the magistrate. The court may enter a no-contact order or continue the no-contact order already in effect for a period of five years from the date the judgment is entered or the deferred judgment is granted, regardless of whether the defendant is placed on probation.

And Hunter was convicted of assault causing bodily injury which is a public offense because it "is prohibited by statute and is punishable by fine or imprisonment." *See* Iowa Code § 701.2. So, we conclude the district court had the authority to terminate, modify, or enter a no-contact order for a period of five years. *See* Iowa Code § 664A.5.

Next Hunter argues the district court was required to make fact-findings or explain its reasoning for entering the permanent no-contact order. In advancing his argument, he relies on the evidentiary standard outlined by the supreme court for extensions of no-contact orders in Iowa Code section 664A.8. *See Vance v. Iowa Dist. Ct.*, 907 N.W.2d 473, 482 (Iowa 2018). But section 664A.8 requires the district court to extend a no-contact order "unless the court finds that the defendant no longer poses a threat to the safety of the [protected party]." And section 664A.5 requires no such showing. *Compare* Iowa Code § 664A.5 *with* § 664A.8. The only condition precedent in section 664A.5 is a conviction, deferred judgment, guilty plea, or contempt finding. Based on the text of the statute, the district court would likely have to make factual findings if it found the defendant "no longer poses a threat to the safety of the [protected party]" and terminated the no-contact

order.  *See* Iowa Code §§ 664A.5, .8.  Finally, Hunter was given notice that the State was seeking a permanent no-contact order and an opportunity to challenge the no-contact order at sentencing, so we find no due process violation.  *Stogdill v. City of Windsor Heights*, 991 N.W.2d 719, 730 (Iowa 2023) (describing procedural due process as requiring "notice and an opportunity to be heard on the issue").  Because that condition was met, we find the district court did not commit legal error in entering a permanent no contact order.  Therefore, we affirm Hunter's sentences.

**AFFIRMED.**

**Langholz, J., concurs; Buller, J., concurs *dubitante*.**

**BULLER, Judge (*dubitante*).**

I agree with the majority that no legal error appears on this record. And I understand why the majority concludes Hunter did not have to preserve error on his no-contact-order challenge, given recent pronouncements from the supreme court. But I do not believe those pronouncements can be reconciled with longstanding principles of Iowa law and appellate procedure or our role as a court for the correction of errors at law. I therefore write separately *dubitante*,[1] to explain why I doubt deciding unpreserved errors is consistent with my oath to abide by the Iowa Constitution and lawful enactments of the elected branches.

In our state, "[i]t is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Preservation of error is required by our governing statutes and our constitution, both of which limit appellate jurisdiction to the "correction of errors at law." *See* Iowa Const. art. V, § 4; Iowa Code § 602.5103(1) (2024). And both our court and the supreme court have recently reaffirmed in controlling cases that we cannot correct an "error" that the district court never made or had the opportunity to correct. *See State v. Hernandez*, 20 N.W.3d 502, 509 (Iowa Ct. App. 2025) (en banc); *State v. Gomez Medina*, 7 N.W.3d 350, 355 (Iowa 2024). This principle is not new—it dates back to before the modern state constitution. *See Danforth, Davis & Co. v. Carter*, 1 Iowa 546, 553 (1855) (identifying the principles underlying the error-

---

[1] *See* Jason J. Czarnezki, *The Dubitante Opinion*, 39 Akron L. Rev. 1, 2 (2006) ("A dubitante . . . opinion indicates that the judge doubted a legal point but was unwilling to state that it was wrong." (citation omitted)).

preservation rules and declaring "[o]ur courts should enforce this system . . . to prevent surprise and prejudice" to courts and litigants).

Here, Hunter's complaint about the no-contact order is that the district court should have known to make fact-findings and explain its reasoning for entering the permanent no-contact order at sentencing—even though he never asked the court to do so. The transcript reveals that, after the State requested the court enter the no-contact order, Hunter never resisted, objected, or asked for any of the things he now complains of on appeal. This is a textbook unpreserved error. And, following our vast array of cases holding that failure to timely object waives a claim, this should end the analysis. *See State v. Rutledge*, 600 N.W.2d 324, 326 (Iowa 1999) ("Our cases are legion that hold error is waived unless preserved by a timely trial objection."). But, unfortunately for judges and practitioners that depend on clarity in the case law, the supreme court's recent decisions have eroded the bedrock principles of error preservation when it comes to sentencing. And this erosion has led to outcomes like the majority opinion.

Our tale begins with the supreme court's recognition that a criminal defendant should not have to object mid-stream to the exercise of discretion in sentencing decisions (e.g. prison or probation), based on the supposition it would be "exceedingly unfair to urge that a defendant, on the threshold of being sentenced, must question the court's exercise of discretion or forever waive the right to assign the error on appeal." *State v. Cooley*, 587 N.W.2d 752, 754 (Iowa 1998). Setting aside that surely this same concern has occurred to every Iowa lawyer compelled to object and potentially irritate a trial judge or jury in order to preserve error, the rule captured in *Cooley* was at least a bright-line exception. It has no bearing on the no-contact-order argument at

issue here, which is entirely about process rather than the court's ultimate discretionary decision.

Independent of cases like *Cooley*, our rules have long recognized that "illegal sentences" are void and can be corrected at any time. *See* Iowa R. Crim. P. 2.24(5)(b). The best early-modern distillation of this rule was in *State v. Ohnmacht*, where the attorney general moved to correct an illegal sentence after a district court—without objection by the county attorney—placed an offender on probation after conviction for a forcible felony. 342 N.W.2d 838, 843 (Iowa 1983). That sentence was illegal on its face. *Id.* at 842. As the supreme court put it, "the district court contravened the legislative mandate in several respects," by entering a void judgment not authorized by statute. *Id.* In finding the claim properly before it, the supreme court held: "Void sentences are not subject to the usual concepts of waiver, whether from a failure to seek review or other omissions of error preservation." *Id.* at 843. Again, this was a bright-line exception allowing challenges to facially illegal sentences not authorized by statute. *See also State v. Hess*, 533 N.W.2d 525, 527 (Iowa 1995) ("When a court imposes a sentence which statutory law does not permit, the sentence is illegal, and such a sentence is void and we will vacate it.").

Recognizing the need for clarity to preserve the bright-line rules by the early aughts, the supreme court in *Tindell v. State* reinforced that the illegal-sentence exception applied only to sentences "not authorized by statute," which are "beyond the jurisdiction of the court and therefore void." 629 N.W.2d 357, 359–60 (Iowa 2001). The court expressly held that procedural defects did not fall under this illegal-sentence rubric and were bound by the normal principles of error preservation. *Id.* at 360. And the court warned: "If we were to expand that concept [the illegal-sentence exception] to encompass

8

redress for underlying procedural defects, as well, it would open up a virtual Pandora's box of complaints with no statutorily prescribed procedures for their disposition nor any time limits for their implementation." *Id*. The *Tindell* court's fears, it turns out, were well placed—though it would take more than twenty years of case law for those fears to fully toboggan down the slippery slope.

In the first decade after *Tindell*, the supreme court largely adhered to the view that the illegal-sentence exception was "narrowly interpreted." *State v. Lathrop*, 781 N.W.2d 288, 292 (Iowa 2010). Synthesizing developments in the case law, the *Lathrop* court used slightly different language to cast the exception as governing sentences that are "inherently illegal, whether based on constitution or statute." *Id*. at 293 (quoting *State v. Bruegger*, 773 N.W.2d 862, 872 (Iowa 2009)). Again, at least conceptually a bright-line rule. And consistent with *Ohnmacht*'s recognition that only facially unauthorized sentences can be corrected without preserved error. *See* 342 N.W.2d at 843.

For another decade, the court abided by the distinction between illegal-sentence challenges and procedurally-defective sentences. A good example of this line-drawing was in *State v. Gordon*, where the court held that a defendant who failed to object to the use of a risk assessment in the district court could not raise such a challenge for the first time on appeal. 921 N.W.2d 19, 24 (Iowa 2018). The court emphasized that "Gordon [wa]s not arguing the district court abused its discretion by imposing a sentence that is too harsh, illegal, or relies on a factor whose illegality is clear without the consideration of further evidence," but instead he was "claiming errors in the proceedings prior to imposition of sentence." *See id*. at 23. Consistent with *Tindell* and the broader corpus of case law, the court explained that the

former did not require preservation of error and the latter did. *See id.* at 22–24. And so, the court concluded, it was "unfair" to reverse the district court "when the court needed more information to determine if the factor it considered was improper and the defendant failed to bring that issue to the attention of the court at the time of sentencing." *Id.* at 24. The law remained in more or less this state for another decade,[2] until things came to a head—and the *Tindell* court's warning flashed bright red—in two recent cases.

First, in *State v. Chawech*, the court cited the revised rules of criminal procedure to assert for the first time that the illegal-sentence exception applies to all claims that "a sentence . . . could not have been lawfully imposed." 15 N.W.3d 78, 85 (Iowa 2024) (quoting Iowa R. Crim. P. 2.24(5)(b)). Two problems. First, I have trouble imagining a legal brief with a sentencing challenge that *doesn't* assert a problem with whether the sentence is "lawful"; this is by definition an exception that swallows the rule. Second, the supreme court when adopting revised rule 2.24 expressly commented that "the revised rule is not intended to affect existing law regarding the authority of appellate courts to correct illegal sentences." Iowa R. Crim. P. 2.24(5)(a) cmt. This comment was not present in the proposed rules filed by the court in March 2020; it was instead added in 2022, after the public comment period[3]—indicating it was added in response to concerns from either interested parties or the General Assembly. I am deeply

---

[2] During this time the General Assembly also expressed a preference for not deciding unpreserved errors on appeal by amending Iowa Code section 814.7, shifting all ineffective-assistance claims to postconviction relief proceedings rather allowing courts to decide them unpreserved on direct appeal. *See* 2019 Iowa Acts ch. 140, § 31.

[3] *Compare* Proposed Amendments: Iowa Court Rules of Criminal Procedure (2020), https://perma.cc/Q5CG-Y3RB, *with* Amendments to the Iowa Court Rules of Criminal Procedure (2022), https://perma.cc/ND7F-V3SW.

concerned by any claim that the rule supports a change in the law when the supreme court expressly promised the opposite in response to public comment. Based in part on this misstatement of the avowed purpose in revising rule 2.24, the court in *Chawech* declared that "both illegal-sentence challenges and procedural-defect challenges are excepted from our error preservation requirements." 15 N.W.3d at 85. And the court turned the longstanding description of the illegal-sentence exception on its head, asserting instead that "most sentencing challenges are not subject to error preservation rules." *Id.* As I think my survey of the past cases demonstrates, this is not historically accurate.

Despite the apparent sea change—declaring an exception to actually be the rule—in *State v. Hallock* this term, the supreme court asserted that "*Chawech* didn't make new law." 31 N.W.3d 36, 42 (Iowa 2026). Another statement hard to square with the evolution of the case law. And made even more confusing by the court not overruling *Ohnmacht*, *Tindell*, *Gordon*, or the numerous other published and unpublished cases that restate those decisions' principles. The court went on to deploy its new understanding of the illegal-sentence doctrine to allow a defendant to challenge a victim impact statement for the first time on appeal despite the opportunity to object below and failure to do so. *Id.*

That brings us to this case. Hunter's claim is that the district court was allowed to enter a no-contact order but had to follow certain procedures first. This is plainly not the *Cooley* type of sentencing-decision discretion where we excuse the lack of objection. It's not like the kind of facially unauthorized sentence at issue in *Ohnmacht* or *Lathrop*. But it is exactly the kind of procedural defect the *Tindell* court wisely closed the box on, and *Gordon* re-affirmed requires a timely objection below. There is no honest way to square

this case law with *Chawech* and *Hallock*. But I also cannot fault the majority for feeling trapped by the two recent decisions, even though they are a material departure from established law.

As worker bees on an intermediate appellate court, we are bound to implement the supreme court's decisions as best we can. *See State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014). But we also took an oath to follow the law, including the Iowa Constitution and the lawful enactments of the General Assembly. Iowa Code § 63.6. Because I doubt eviscerating the error-preservation rules, as *Chawech* and *Hallock* seem to compel, is consistent with fidelity to the code and constitution, I feel I must issue this separate *dubitante* writing. Absent those recent cases, I would conclude—as the *Tindell* and *Gordon* courts did—that challenges to procedurally defective sentences must be preserved and the failure to do so bars relief.